UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD MANLEY, on behalf of himself and all others similarly situated, | |
| Plaintiff, | **14 Civ. 1693 (HBP)** |
| -against- | |
| MIDAN REST. INC. d/b/a MORAN'S CHELSEA and COLLEEN LYDON, | |
| Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT

Louis Pechman
Vivianna Morales
Pechman Law Group PLLC
488 Madison Avenue, 11th Floor
New York, New York 10022
pechman@pechmanlaw.com
morales@pechmanlaw.com
(212) 583-9500

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................. 1

I.   FACTUAL AND PROCEDURAL BACKGROUND ................................ 1

    A.  Procedural History ..................................................................... 1

    B.  Discovery ..................................................................................... 3

    C.  Settlement Negotiations ............................................................ 4

II.  SUMMARY OF THE SETTLEMENT TERMS ...................................... 4

    A.  The Settlement Fund .................................................................. 4

    B.  Allocation Formula .................................................................... 5

    C.  Attorneys' Fees, Litigation Costs, and Service Payments ...... 5

    D.  Settlement Claims Administrator .............................................. 7

III. CLASS ACTION SETTLEMENT PROCEDURE .................................. 7

ARGUMENT ..................................................................................................... 8

I.   THIS COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............... 8

    A.  Legal Standard for Preliminary Approval of Settlement ....................... 8

        i.   The Settlement is Fair, Reasonable, and Adequate ..................... 11

            a.  Litigation Through Trial Would be Complex, Costly and Long (*Grinnell* Factor 1) ......................................... 12

            b.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ....................................................... 13

            c.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) .................................................... 13

            d.  Plaintiffs Would Face Real Risks if the Case Proceeded to Trial (*Grinnell* Factors 4 and 5) ............. 14

e.   Establishing a Class and Maintaining It Through Trial (*Grinnell* Factor 6) ................................................................16

f.   Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7) ...................................16

g. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................................17

II.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE..............................................................................18

A. Numerosity ....................................................................................20

B. Commonality .................................................................................20

C. Typicality ......................................................................................21

D. Adequacy of the Named Plaintiffs ...........................................22

E. Certification Is Proper Under Rule 23(b)(3) ..........................23

i. Common Questions Predominate ........................................24

ii. Superiority ................................................................................25

III.   PECHMAN LAW GROUP PLLC SHOULD BE APPOINTED CLASS COUNSEL.......................................................................................26

IV.   THE PROPOSED CLASS NOTICE IS APPROPRIATE..................27

V.   THE FLSA SETTLEMENT .......................................................................28

CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 24, 25

*Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036,
2014 U.S. Dist. LEXIS 179538 (S.D.N.Y. Dec. 29, 2014) (Pitman, M.J.)..............*passim*

*Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024,
1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990) (Sifton, D.J.) ........................ 17

*Carino v. Broadway & 166, LLC et al.*,
No. 10 Civ. 8506, Docket No. 35 (S.D.NY. May 1, 2013) (Swain, D.J.)..................... 23

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................... 11, 12, 18

*Clem v. Keybank, N.A.*, No. 13 Civ. 789,
2014 U.S. Dist. LEXIS 42426 (S.D.N.Y. Mar. 27, 2014) (Francis, M.J.) ....................... 9

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ............................................................................................. 20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007)............................................................................................. 24

*Denney v. Deutsche Bank AG*,
443 F.3d 253, 268 (2d Cir. 2006) ................................................................................. 22

*Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 1027,
2011 U.S. Dist. LEXIS 156546 (S.D.N.Y. Jan. 20, 2011) (Swain, D.J.) ....................... 10

*Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659
2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007) (Irizarry, D.J.)..................... 23

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968) .......................................................................................... 25

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
2015 U.S. Dist. LEXIS 65197 (E.D.N.Y. May 18, 2015) (Brown, M.J.) ....................... 11

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. Apr. 29, 2005) (Payson, M.J.).......................................*passim*

*Hart v. RCI Hospitality Holdings*, No. 09 Civ. 3043,
2015 U.S. Dist. LEXIS 126934
(S.D.N.Y. Sept. 22, 2015) (Engelmayer, D.J.)..................................................................6

*Henry v. Little Mint, Inc.*, No. 12 Civ. 3996,
    2014 U.S. Dist. LEXIS 72574
    (S.D.N.Y. May 23, 2014) (McMahon, D.J.)......................................................6, 8, 12, 14

*Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472,
    2012 U.S. Dist. LEXIS 165771 (S.D.N.Y. Nov. 15, 2012) (Freeman, M.J.)................22

*In re Chickie's & Pete's Wage & Hour Litig.*,
    2014 U.S. Dist. LEXIS 30366 (E.D. Pa. Mar. 7, 2014) (Surrick, D.J.)..........................23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
    2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) (McMahon, D.J.) .................10

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. Jul. 19, 1997) (Pollack, D.J.) ..................................................28

*In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145
    2013 U.S. Dist. LEXIS 63065 (S.D.N.Y. Apr. 29, 2013) (Wood, D.J.)..........................11

*In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. 200
    1995 U.S. Dist. LEXIS 12579 (S.D.N.Y. Aug. 30, 1995) (Pollack, D.J.)..................9, 19

*In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761
    2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008) (McMahon, D.J.) .................10

*In re Traffic Exec. Ass'n E. R.R.*,
    627 F.2d 631 (2d Cir. 1980)...........................................................................................10

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124, 139 (2d Cir. 2001).....................................................................................24

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).............................................................................................13

*Karic v Major Auto. Cos.*,
    799 F. Supp.2d 219 (E.D.N.Y. 2011) (Pollack, M.J.) ....................................................28

*Lizondro-Garcia v. Kefi LLC*, 12 Civ. 1906,
    300 F.R.D. 169 (S.D.N.Y. May 29, 2014) (Pitman, M.J.).......................................*passim*

*Marriott v. Cnty. of Montgomery*,
    227 F.R.D. 159 (N.D.N.Y. March 25, 2005) (Nurd, D.J.) .............................................24

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995).............................................................................................8

*McBean v. City of New York*, 228 F.R.D. 487
    2005 U.S. Dist. LEXIS 7476 (S.D.N.Y. Apr. 25, 2005) (Lynch, D.J.)............................24

*McKenna v. Champion Int'l Corp.,*
    747 F.2d 1211 (8th Cir. 1984)..........................................................................28

*Meredith Corp. v. SESAC, LLC,*
    2015 U.S. Dist. LEXIS 20055 (S.D.N.Y. Feb. 19, 2015) (Engelmayer, D.J.) ..............19

*Moore v. Painewebber, Inc.* 306 F.3d 1247 (2d Cir. 2002) ...........................................24

*Morangelli v. Roto-Rooter Servs. Co.,*
    2014 U.S. Dist. LEXIS 7414 (E.D.N.Y. Jan. 6, 2014) (Cogan, D.J.) ...........................13

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ............................................................................18

*Palacio v. E\*Trade Financial Corp.,*
    2012 U.S. Dist. LEXIS 41886 (S.D.N.Y. Mar. 12, 2012) (Freeman, D.J.) ..................18

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.,*
    698 F.2d 150 (2d Cir. 1983) ............................................................................20

*Rossini v. Ogilvy & Mather, Inc.,*
    798 F.2d 590 (2d Cir. 1986)..............................................................................24

*Sakiko Fujiwara v. Sushi Yasuda Ltd.,*
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) (Pauley, D.J.) ......................................................13

*Sanchez v. JMP Ventures, L.L.C.,*
    2015 U.S. Dist. LEXIS 16026  (S.D.N.Y. Feb. 10, 2015) (Dolinger, M.J.) ............21, 25

*Toure v. Cent. Parking Sys.,* No. 05 Civ. 5237,
    2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) (Pauley, D.J.)......................22

*Trinidad v. Breakaway Courier Sys., Inc.,* No. 05 Civ. 4116,
    2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007) (Sweet, D.J) .............................21

*Wagner v. NutraSweet Co.,*
    95 F.3d 527 (7th Cir. 1996)..............................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir. 2005) ................................................................8, 10, 16

*Yuzary v. HSBC Bank USA, N.A.,* No. 12 Civ. 3693
    2013 U.S. Dist. LEXIS 61643 (S.D.N.Y. April 29, 2013) (Gardephe, D.J).............9, 10

*Zeltser v. Merrill Lynch & Co.,* 13 Civ. 1531
    2014 U.S. Dist. LEXIS 135635 (S.D.N.Y. Sept. 23, 2014) (Maas, M.J.).........................6

**STATUTES**

29 U.S.C. § 216 (2012) ............................................................................*passim*

29 U.S.C. § 203 (2012) .............................................................................2

Fed. R. Civ. P. 23 ..................................................................................*passim*

N.Y. Lab. Law (Consol. 2009)............................................................*passim*

N.Y. Codes, Rules and Regulations  ......................................................2

**TREATISES**

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*
    (4th ed. 2002)......................................................................7, 8, 11, 19

This Memorandum of Law in submitted on behalf of Plaintiff Edward Manley ("Plaintiff" or "Manley") and opt-in Plaintiffs Michael Chang, Ricardo Rodriguez, Jennifer Kuehn, Benjamin Sperry, and Chris Hodges (together with Manley, referred to as the "Plaintiffs") in support of their motion for Preliminary Approval Of Class Action Settlement, Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notice of Settlement.  Subject to Court approval, Plaintiffs and Defendants Midan Rest. Inc. d/b/a Moran's and Colleen Lydon (collectively "Moran's" or "Defendants") (together with Plaintiffs, the "parties") have settled this wage and hour class and collective action for $912,500.  In support of this motion, Plaintiffs submit the Declaration of Louis Pechman ("Pechman Decl.") dated October 22, 2015, attaching thereto as Exhibit 1 ("Ex. 1"), a true and correct copy of the Settlement Agreement.

## INTRODUCTION

The proposed settlement satisfies all the criteria for preliminary approval. Accordingly, Plaintiffs respectfully request that the Court:  (1) grant preliminary approval of the Settlement Agreement as fair, adequate and reasonable; (2) conditionally certify the proposed settlement class under Federal Rules of Civil Procedure 23(b)(3); (3) appoint Pechman Law Group PLLC as Class Counsel; (4) appoint Rust Consulting as Claims Administrator; (5) approve the Notice of Proposed Class Action Lawsuit Settlement (the "Notice"); and (6) schedule a Fairness Hearing at the Court's convenience at which the Court will consider the parties' motion for final approval of the settlement, attorneys' fees and costs, and service awards.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Procedural History

Plaintiff Manley is a former waiter at Moran's Restaurant, an Irish style restaurant that closed in March 2015 and was located at 146 Tenth Avenue, New York, New York 10111.   On March 12, 2014, Manley, on behalf of himself and servers, bussers, and bartenders similarly situated to him, filed this action alleging that Defendants (1) improperly paid tipped employees pursuant to a tip credit in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); (2) failed to pay tipped employees the appropriate overtime premium for all hours worked in excess of forty per workweek, in violation of the FLSA and NYLL; (3) failed to pay tipped employees spread-of-hours pay, in violation of the NYLL; (4) unlawfully retained a portion of tipped employees' tips, in violation of the NYLL; (5) failed to reimburse tipped employees for the purchase of materials necessary to complete the work duties assigned to them by Defendants, in violation of the NYLL; and (6) failed to meet the NYLL's requirements on wage statements and notices.

Specifically, Manley alleged that Defendants were not entitled to apply the tip credit allowance that is available under the FLSA and the NYLL because Defendants improperly retained a portion of their gratuities.   Manley alleged that Defendants retained a portion of an automatic twenty percent "gratuity fee" charged to banquet customers.   Manley also alleged that Defendants improperly retained five percent of the tipped employees' credit card gratuities, an amount that exceeded the average cost of processing the employees' credit card gratuities.   Finally, Manley maintained that Defendants were ineligible to apply the FLSA and NYLL tip credit because they failed to meet the statutory notice prerequisites, which must be followed in order to implement a tip credit.   *See* 29 U.S.C. § 203(m); 12 N.Y.C.R.R. §§ 137-2.2 (repealed

January 1, 2011), § 146-1.3 (effective January 1, 2011).  Defendants denied Manley's allegations and maintain that their compensation practices were lawful.

Manley brought this action on behalf of himself and all other non-exempt tipped employees, including servers, bussers, and bartenders, employed by Defendants within the three years for the FLSA claims and within the six years prior to the filing of this lawsuit for the New York State Law claims. Pechman Decl. at ¶ 9.  Since the time the Complaint was filed, five individuals opted-into this lawsuit. *Id.*

**B.   Discovery**

At the Fed. R. Civ. P. 16 Initial Conference before Magistrate Judge Henry B. Pitman, the parties agreed to exchange limited discovery to assist them in developing their claims and defenses.   In furtherance of class-wide settlement discussions, Defendants produced over one thousand documents, including two hundred and fifty spreadsheets containing a sampling of all putative class members' payroll summaries and the final yearly paystub issued to each putative class member.  Defendants also produced all available banquet contracts, Plaintiffs' personnel records, timekeeping records, paycheck records, and all available tip records.  Likewise, Plaintiffs produced payroll records and communications relating to Moran's.

For most of the liability period, Moran's maintained electronic time records. However, prior to 2011, Moran's used manual punch clock cards.  These cards were kept in the basement of Moran's, and were destroyed by flooding due to Hurricane Sandy. Throughout the discovery period, the parties' counsel engaged in telephonic and email conversations to help Plaintiffs' counsel arrive at a complete and thorough understanding of Defendants' records. Pechman Decl. at ¶ 18.

After scrutinizing the extensive payroll data and reviewing it with Plaintiffs, Plaintiffs' counsel performed individualized damage calculations for each of the two

hundred-seventy-six putative class members and provided the calculations to Defendants. Pechman Decl. at ¶ 20.

Thereafter, Defendants deposed three of the seven Plaintiffs and Plaintiffs' counsel deposed Tom Murphy, the General Manager of Moran's and corporate representative of Defendant Midan Rest. Inc. Pechman Decl. at ¶ 21, 23.

## C.    Settlement Negotiations

The parties were ultimately able to reach a settlement after a thirteen hour mediation session with mediator Ruth Raisfeld, Esq., a well-known and experienced mediator in wage and hour law. Pechman Decl. at ¶ 24. Prior to the mediation, Plaintiffs' counsel submitted a detailed mediation statement that explained the claims and damage calculations. Pechman Decl. at ¶ 25. At the mediation, the parties reached agreement on the settlement amount and several other key terms. Pechman Decl. at ¶ 27. During the next few months, the parties negotiated the remaining terms of the settlement, which were memorialized in an agreement executed by the parties on or about September 15, 2015. *Id.* At all times during settlement negotiations, negotiations were conducted on an arms-length basis. Pechman Decl. at ¶ 29.

## II.    SUMMARY OF THE SETTLEMENT TERMS

## A.    The Settlement Fund

The Settlement Agreement provides that Defendants shall pay a settlement amount of Nine-Hundred Twelve-Thousand Five-Hundred Dollars ($912,500.00) (the "Settlement Fund") (Pechman Decl., Ex. 1 ("Settlement Agreement") § 1.27). The Settlement Fund includes awards to putative class members, a service award to Manley, attorneys' fees and costs, and reasonable Claims Administrator's fees. *Id.* at § 3.2, § 1.26.

The proposed class will include Plaintiffs and all servers, bussers, and bartenders who worked for Moran's during the Liability Period. Pechman Decl. at ¶ 31.

**B.      Allocation Formula**

After the allocation of court-approved attorneys' fees, service award, and costs, the amount remaining from the Settlement Fund (the "Net Settlement Fund") will be divided among the putative class members based on an allocation formula. Settlement Agreement § 3.3(A).   Each putative class member who does not opt-out of the settlement (a "Participating Class Member") will receive a proportionate share of the Net Settlement Fund based on the Participating Class Member's total wage damages. *Id.* at § 3.3(B). Each Participating Class Member's calculated damage amount represents damages for unpaid minimum wages, overtime pay, spread of hours pay, misappropriation of gratuities, unlawful deductions, and statutory penalties for failure to provide compliant annual wage notices, and for class members who worked as bartenders, for failure to provide accurate wage statements.

The Claims Administrator will then divide each Participating Class Member's total wages owed by the total amounts owed to all Participating Class Members to determine each Participating Class Member's percentage of the Net Settlement fund. *Id.* The Claims Administrator will then multiply each Qualified Class Member's portion of the Net Settlement Fund by the Net Settlement Fund to determine the amount to be paid to each Qualified Class Member. *Id.*

**C.      Attorneys' Fees, Litigation Costs, and Service Payments**

Consistent with the Settlement Agreement and without objection from Defendants, Plaintiffs' counsel will apply for one third of the Settlement Fund as attorneys' fees.   Additionally, Plaintiffs' counsel will seek reimbursement for their reasonable litigation costs and expenses from the Fund. *Id.* at § 3.2.

In addition to his individual award, lead Plaintiff Manley will apply for a service award payment in recognition of the services he rendered on behalf of the Class.

Manley is the class representative and the only Plaintiff named in this lawsuit. Manley served the Class by retaining counsel, assisting with the preparation of the Complaint, producing documents in support of the claims, attending all depositions, reviewing documents produced by Defendants, assisting with the preparation of the mediation briefing and the mediation session, and shouldering the risks incurred as named Plaintiff and class representative. Pechman Decl. at ¶ 37. Plaintiffs will move for Court approval of a Service Award of $15,000 to Manley. Such service awards are common in class action cases and serve to "compensate Plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the Plaintiff[s]." *Zeltser v. Merrill Lynch & Co.*, No. 13 Civ. 1531, 2014 U.S. Dist. LEXIS 135635, at *25 (S.D.N.Y. Sept. 23, 2014) (Maas, M.J.); *see also Hart v. RCI Hospitality Holdings*, No. 09 Civ. 3043, 2015 U.S. Dist. LEXIS 126934, at *49 (S.D.N.Y. Sept. 22, 2015) (Engelmayer, D.J.) (approving $15,000 in service payments for the two named Plaintiffs and class representatives); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *27 (S.D.N.Y. May 23, 2014) (McMahon, D.J.) ("In a wage and hour case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate.").

The Court need not rule on fees or service payment at this time. Both the application for attorneys' fees and the application for service awards are separate from approval of the Settlement Agreement, and will be fully briefed prior to final approval. Pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), Plaintiffs' counsel will apply for attorneys' fees, reimbursement of expenses, and service payments along with their Motion for Final Approval of the Settlement.

**D.    Settlement Claims Administrator**

The parties have jointly designated Rust Consultants as the proposed settlement claims administrator.  The settlement claims administrator's reasonable fees and costs will be paid from the Settlement Fund. Settlement Agreement § 1.26.   The claims administrator estimates that their costs will not exceed $15,500. Pechman Decl. ¶ 34.

**III.   CLASS ACTION SETTLEMENT PROCEDURE**

Rule 23 sets forth a defined procedure and specific criteria for settlement approval in class action settlements.   The Rule 23(e) settlement approval procedure describes three distinct steps:

(1)    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

(2)    Dissemination of mailed and/or published notice of settlement to all affected class members; and

(3)    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §§ 11.22, *et seq.* (4th ed. 2002) ("Newberg").

With this motion, Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the Settlement Agreement, approving Plaintiffs' proposed notice, and authorizing its distribution.

The parties respectfully submit for the Court's consideration and approval the following proposed schedule for final resolution of this matter:

(1)    Within twenty-one days of the Court granting Plaintiffs' Motion for Preliminary Approval of the Settlement Agreement and approval of the Notice, Defendants will provide the Settlement Claims Administrator with the contact information of the putative class members.

(2)    The Notice of Class Action Settlement ("Notice") will be mailed to class members within fifteen days of Defendants provision of the contact information to the Claims Administrator.

(3)     Class members will have sixty (60) days after the date the Notice is mailed to object to the Settlement ("Notice Period").

(4)     Plaintiffs will file a Motion for Final Approval of Settlement, Service Payments, and Attorneys' Fees before the Fairness Hearing.

(5)     A Fairness Hearing will be held as soon as is convenient for the Court.

(6)     After the Fairness Hearing, if the Court grants Plaintiffs' Motion for Final Approval of the Settlement, Plaintiffs will request that the Court issue a Final Order and Judgment.

(7)     The Effective Date of Settlement ("Effective Date") shall be thirty days after the Court enters its Final Order and Judgment if no appeal is filed.  If an appeal is filed and overruled, then the Effective Date of final approval shall be the next business day after all appeals are finally resolved in favor of final approval.

## ARGUMENT

## I.     This Court Should Preliminarily Approve The Settlement

## A.     Legal Standard for Preliminary Approval of Settlement

Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed class action settlement is a matter of discretion for the district court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

The law favors compromise and settlement of class action suits and grants courts broad discretion to approve settlements.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *15-16 (S.D.N.Y. May 23, 2014).  "In exercising this discretion,

courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 61643, at *1 (S.D.N.Y. Apr. 29, 2013) (Gardephe, J.); *see also Clem v. Keybank, N.A.*, No. 13 Civ. 789, 2014 U.S. Dist. LEXIS 42426, at *1 (Mar. 27, 2014) (Francis, M.J.) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ").

"Preliminary approval is the first step in the settlement of a class action whereby the court 'must preliminarily determine whether notice of the proposed settlement . . . should be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement.'" *Lizondro-Garcia v Kefi LLC*, 300 FRD 169, 179 (S.D.N.Y. May 29, 2014) (Pitman, M.J.) (omitting internal citations).

A district court reserves the ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. 200, 210, 1995 U.S. Dist. LEXIS 12579 (S.D.N.Y. Aug. 30, 1995) (Pollack, D.J.).

"Preliminary approval of a settlement agreement requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi LLC*, 300 FRD 169, 179 (S.D.N.Y 2014) (Pitman, M.J.) (internal citations omitted). "To grant preliminary approval, the Court need only find that there is 'probable cause' to submit the [Settlement] to class members and hold a full-scale hearing as to its

fairness." *Id.* at 179-80 (citing *In re Traffic Exec. Ass'n E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980)). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Lizondro-Garcia v. Kefi LLC*, 300 FRD 169, 179 (S.D.N.Y. May 29, 2014) (Pitman, M.J.) (citing *Yuzary*, 2013 U.S. Dist. LEXIS 61643 at *1.).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). As this Court has previously noted, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 U.S. Dist. LEXIS 179538, at *3 (S.D.N.Y. Dec. 29, 2014) (Pitman, M.J.) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Dorn v. Eddington Sec., Inc.*, 2011 U.S. Dist. LEXIS 156546, at *6 (S.D.N.Y. Sept. 21, 2011) (Swain, D.J.) (citing *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) (McMahon, D.J.); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *10–11 (S.D.N.Y. July 31, 2008) (McMahon, D.J.) ("[A] strong initial presumption of fairness attaches to a proposed settlement if it was the product of arm's-length negotiations conducted by a capable counsel") (internal quotations omitted). Consequently, "when evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it turn consideration of the adequacy of the settlement into a trial or a rehearsal of

the trial." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 2015 U.S. Dist. LEXIS 65197, at *18 (E.D.N.Y. May 18, 2015) (Brown, M.J.).  Finally, "[i]n exercising this discretion, courts should give weight to the parties' consensual decision to settle class action cases because they and their counsel are in unique positions to assess potential risks." *In re Penthouse Exec. Club Comp. Litig.*, 10 Civ. 1145, 2013 U.S. Dist. LEXIS 63065, at *6 (S.D.N.Y. Apr. 29, 2013) (Wood, D.J.) (internal citations omitted).

### i.    The Settlement is Fair, Reasonable, and Adequate

"In assessing whether a settlement is substantively fair, reasonable, and adequate, courts in this Circuit use the nine-factor test set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See Lizondro-Garcia*, 300 F.R.D. 169, 178 (S.D.N.Y. May 29, 2014) (Pitman, M.J.).  Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," it is useful for the Court to consider the criteria on which it will ultimately judge the Settlement Agreement.  *Newberg* §§ 11.25-11.26.

The *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.  Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

a.    **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to class certification proceedings, dispositive motions, or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the Rule 23 Class.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *18 (S.D.N.Y. May 23, 2014) (McMahon, D.J.) (internal citations omitted). This case is no exception, as there are 276 Rule 23 putative class members and claims have been brought under both federal and state statutes.

The parties have already undertaken considerable expense in litigating this matter.  Further litigation without settlement would necessarily result in additional costs and delay.  Additional depositions would be required to conclude discovery. Specifically, if the case went forward, Plaintiffs would depose individual Defendants Colleen Lydon, and additional members of Moran's management, including former assistant managers and the head chef, who is alleged to have taken gratuities. Defendants would also depose the remaining Plaintiffs.  Plaintiffs would move for class and collective certification, which Defendants would vigorously oppose.  And, to the extent certification was granted and any dispositive motions denied, preparing and putting on evidence on the pertinent factual and legal issues would consume tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial would be necessary, requiring extensive testimony by Defendants, Plaintiffs, and numerous class members.  Any judgment would likely be appealed, thereby extending the duration of the litigation.  This settlement, on the other hand, makes monetary relief available to

putative class members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

  **b.  The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)**

  Notice of the Settlement has not yet been issued to the class, however, the Plaintiffs support the settlement. Pechman Decl. at ¶ 36.  The Court should analyze this factor after Notice is issued and Rule 23 Class Members are given a formal opportunity to object, after the preliminary approval process will provide further feedback from the Class on the settlement.

  **c.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)**

  The parties have completed enough discovery, including the deposition of Moran's General Manager and three opt-in Plaintiffs, to negotiate the instant settlement. *Morangelli v. Roto-Rooter Servs. Co.*, 2014 U.S. Dist. LEXIS 7414, at *19 (E.D.N.Y. Jan. 6, 2014) ("The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement ... [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.") (internal quotations omitted).  The proper determination is "'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Sakiko Fujiwara v. Sushi Yasuda, Ltd.*, 58 F. Supp. 3d 424, 433 (S.D.N.Y. 2014) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir.2004)).

  The parties' investigation and discovery here meets this standard.  Plaintiffs' counsel conducted an extensive investigation of the claims in the lawsuit, including discussions with the Plaintiffs, review of thousands of documents and spreadsheets, including time and payroll data produced by Defendants, and analysis and preparation of a comprehensive damages analysis.  Additionally, Plaintiffs engaged in a thirteen-

hour mediation with an experienced neutral third party mediator during which they engaged in a vigorous exchange regarding their respective claims and defenses. Pechman Decl. ¶¶ 24, 27.  Based on these circumstances, the parties were well equipped to evaluate the strengths and weaknesses of the case.

### d.   Plaintiffs Would Face Real Risks if the Case Proceeded to Trial (*Grinnell* Factors 4 and 5)

While Plaintiffs and their counsel believe that their claims have been asserted in good faith and have considerable merit, they also recognize that Moran's has excellent counsel and has mounted considerable defenses to liability and damages. "In weighing the risks of establishing liability and damages, the Court 'must only weigh the likelihood of success by the Plaintiff class against the relief offered by the settlement.'" *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *22 (S.D.N.Y. May 23, 2014) (McMahon, D.J.).

If the case proceeded to trial, proving that Defendants improperly retained gratuities could be challenging for Plaintiffs. In particular, that Moran's General Manager, Tom Murphy, retained a portion of the banquet gratuities. Plaintiffs allege that Moran's charged a flat 20% gratuity fee to its banquet clients and did not distribute that fee in its entirety to Plaintiffs. Pechman Decl. at ¶ 11.  However, this may be difficult to prove because Defendants alleged that a majority of the banquet contracts and corresponding tip sheets were stored on a computer destroyed by Hurricane Sandy Pechman Decl. at ¶ 16.  As it turns out, the banquet contracts that were produced by Defendants were mostly informal agreements that varied in specificity and did not explicitly state the gratuities paid by the client. *Id.*  Moran's also asserts that it did not retain any invoice or receipt of how much clients actually paid in gratuities. Pechman Decl. at ¶ 22. During his deposition, General Manager Murphy explicitly denied that

the restaurant retained any banquet gratuities. *Id.*   General Manager Murphy also testified that Plaintiffs might have overestimated how much a banquet customer left in gratuity.   *Id.*  Murphy stated that clients often left less than 20% in gratuity and suggested that perhaps the headwaiters pocketed more in gratuities than the rest of the waitstaff. *Id.*   Therefore proving that management retained a share of the banquet gratuities would pose difficult factual questions, and would rely on anecdotal recollections of events that occurred up to seven years ago.

Additionally, Plaintiffs allege that Moran's failure to reimburse the putative class members for aprons and wine keys constitutes an unlawful deduction from wages pursuant to NYLL 193(1). Pechman Decl. at ¶ 10.  Defendants argue that any aprons or wine keys purchased by the staff were not required items and therefore not subject to reimbursement. Pechman Decl. at ¶ 22.  Additional testimony would be necessary to establish liability and damages on this claim.

Finally, Defendants argued that assuming their wage practices violated the labor laws, they were not willful violations and that Defendants made a good-faith attempt to comply with the law. As a result, Defendants argue that Plaintiffs and the putative class members are not entitled to liquidated damages.  Since a determination of good faith for purposes of establishing liquidated damages is a question of law for the Court to decide at its discretion, it is possible that the Court would credit Defendants' argument and liquidated damages would not be assessed.

In light of the defenses available to Defendants and the fact-intensive nature of proving liability under the FLSA and NYLL, a jury trial on the merits could pose substantial risk to Plaintiffs as to both liability and damages.  While Plaintiffs believe that their claims are meritorious, Plaintiffs' counsel is experienced and realistic, and understands that the resolution of liability issues, the outcome of the trial, and the

inevitable appeals process are inherently uncertain in terms of outcome and duration. Courts note that, regardless of the perceived strength of Plaintiffs' case, liability is "no sure thing." *Wal-Mart*, 396 F.3d at 118. Plaintiffs' counsel also recognizes that Moran's has presented significant and potentially dispositive arguments that pose a significant risk to their changes for class-wide recovery and this favors preliminary approval.

### e. Establishing a Class and Maintaining It Through Trial (*Grinnell* Factor 6)

While Plaintiffs and their counsel believe that they could obtain class certification in a contested proceeding, this issue is not risk free.

Should the Court deny approval for the settlement, Moran's would contend that contested litigation of the class claims would not be manageable or appropriate. Specifically, Moran's would argue that determining whether the putative class action members were notified of the tip credit will require individualized review of what each individual was told when they were hired to work at Moran's. Similarly Moran's would contend that class certification is not appropriate because the claims of certain class members vary, as some putative class members did not work overtime and others worked prior to the 2011 Wage Theft Prevention Act's enactment and therefore do not maintain those claims. Finally Moran's would argue that all of the damages would require numerous determinations concerning the unlawful deduction claims, *i.e.,* what items each individual purchased as a work related expenses and whether each individual experienced a customer walkout and was forced to pay the bill.

### f. Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)

Defendants' ability to withstand a greater judgment has been raised by defense counsel. Defendants sold the Moran's restaurant in 2014 and at mediation, owner Colleen Lydon claimed to have multiple investors and other debts that must be paid

back.  Pechman Decl. at ¶ 26.  In the absence of a viable restaurant entity, Plaintiffs' must recover from Defendant Colleen Lydon personally.  Defendants sharply contests that Colleen Lydon qualifies as an employer and maintains she has no personal liability under the FLSA and NYLL.  Moreover, even if Defendants could withstand a greater judgment, this Court has noted "this fact, by itself, however, does not render the proposed settlement unfair." *Ballinger v. Advance Magazine Publishers*, Inc., No. 13 Civ. 4036, 2014 U.S. Dist. LEXIS 179538, at *6 (S.D.N.Y. 2014) (Pitman, M.J.) (citations omitted); *see also Frank*, 228 F.R.D. at 186 (citations omitted) ("[D]efendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."). This factor also favors preliminary approval.

### g. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

According to Plaintiffs' calculations, the Rule 23 Class is owed $676,629.46 in backpay, therefore the Settlement Fund represents an excellent settlement and compensates the Rule 23 Class for their back pay. Pechman Decl. at ¶ 33.  The Settlement Fund exceeds the amount the Rule 23 Class would have received if, according to Plaintiffs, they were paid correctly.

Given the attendant risks of litigation, even though recovery could potentially be greater if Plaintiffs succeeded on an award of double liquidated damages under the FLSA and the NYLL claims at trial and survived an appeal, this settlement makes the Plaintiffs and putative class members whole without the risk of a jury trial. *See Cagan v. Anchor Saving Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *34–35 (E.D.N.Y. May 17, 1990) (Sifton, D.J.) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a

satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Here, the settlement provides much more than a fraction of the potential recovery and should therefore be approved. Even after taking into account attorneys' fees, service awards, and costs, the Rule 23 Class will still receive a significant recovery, approximately eighty-five percent (85%) of their back wages.

The determination of whether a Settlement Fund is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (citations omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972)).

In sum, the *Grinnell* factors all weigh in favor of issuing preliminary approval of the Settlement Agreement. In the event that a substantial number of objectors come forward with meritorious objections, then the Court may reevaluate its determination.

## II.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiffs seek to certify a class under Rule 23 of the Federal Rule of Civil Procedure for settlement purposes only. Even in the context of a settlement in which the parties have stipulated to certification for settlement purposes only, the Court should make a determination that the proposed settlement class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, and at least one of the subsections of Rule 23(b). *See Palacio v. E\*Trade Financial Corp.*, 2012 U.S. Dist. LEXIS 41886, at \*4 (S.D.N.Y. Mar. 12, 2012) ("For settlement purposes only, Plaintiffs meet all of the requirements for class certification under Federal Rule of

Civil Procedure 23(a) and (b)(3)"). Here, Plaintiffs' request that the Court provisionally (for settlement purposes only) certify the settlement class, and appoint Plaintiffs' counsel as Class Counsel and Edward Manley as the Class Representative.

All of the requirements for certification for settlement purposes are met, and the parties have consented to provisional certification for settlement purposes only. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

The Second Circuit has recognized that "[t]emporary settlement classes have proved to be quite useful in resolving major class action disputes." *Meredith Corp. v. SESAC*, LLC, 2015 U.S. Dist. LEXIS 20055, at *17 (S.D.N.Y. Feb. 19, 2015) (Engelmayer, D.J.) ("Certification of a settlement class 'has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants.'") (citing *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995).

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

the fair and efficient adjudication of the controversy. *Id.* Moran's disputes that the claims alleged in the action are proper for certification under Rule 23 or the FLSA on behalf of the purported class, but it has agreed, for the purposes of settlement only, not to contest class certification.

## A.   Numerosity

The proposed class easily satisfies the numerosity factor because there are approximately 276 Class Members. Pechman Decl. at ¶ 35. "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

## B.   Commonality

The purpose of the commonality requirement, is to test "whether the named Plaintiff's claim and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims "need not be identical, . . . there must exist common questions of fact or law." *Frank*, 228 F.R.D. at 181 (citing *Port Auth. Police Benevolent. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153–54 (2d Cir. 1983)). Courts construe the commonality requirement liberally. *Id.* As this Court noted in *Ballinger v. Advance Magazine Publishers Inc.*, "[p]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but their injuries derive from a unitary course of conduct by a single system." No. 13 Civ. 4036, 2014 U.S. Dist. LEXIS 179538, at *10 (S.D.N.Y. Dec. 29, 2014) (Pitman, M.J.) ("Even a single common legal or factual question will suffice.").

This case involves several common factual and legal issues, including whether Defendants: (1) improperly applied the tip credit; (2) paid spread of hours pay; (3) misappropriated gratuities; (4) made unlawful deductions from wages; and (5) meet the

NYLL's requirements on wage statements and wage notices. These alleged wage and hour violations – involving common operative facts stemming from corporate policies that affected class members in the same way – are sufficient to meet Rule 23(a)'s commonality factor. *See Lizondro-Garcia*, 300 F.R.D. at 175 ("[B]ecause the claims of the named Plaintiffs and those of the putative NYLL class derive from the same overtime and tipping practices of Defendants, each of these questions will generate answers that will help resolve the claims in the class action") (internal citations omitted); *see also Sanchez v. JMP Ventures, L.L.C.*, 2015 U.S. Dist. LEXIS 16026, *8 (S.D.N.Y. Feb. 10, 2015) (Dolinger, M.J.) (commonality satisfied where "all class members claim that Defendants failed to pay them the wages they were entitled to and did not provide them with certain notices as required by New York law" and "[a]ll of [class members'] claims are similar and arise under the NYLL, and there are thus "questions of law or fact common to the class").

## C.   Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the Defendant's liability." *Lizondro-Garcia*, 300 F.R.D. at 175 (internal quotations omitted).

Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116 (RWS), 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir.

21

1996)).

In this case, Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the putative class members' claims. Plaintiffs contend that all servers, bussers, and bartenders at Moran's worked as tipped employees and were subject to common policies and practices. Plaintiffs also claim the same general injuries as the putative class members, *i.e.*, sub-minimum wages and overtime pay to all class members, misappropriated gratuities, unlawful deductions from wages, unpaid spread of hours pay, and failure to provide wage notices at the time of hire and proper wage statements as required under the NYLL. *See Ballinger*, 2014 U.S. Dist. LEXIS 179538, at *10 ("Typicality satisfied where Plaintiffs alleged and Defendant did not contest that class members was employed to do similar work under same corporate policy"); *see also Lizondro-Garcia*, 300 F.R.D. at 175 (typicality requirement satisfied where employees worked in the same positions and were subjected to the same overtime practices as members of the proposed class.); *see also Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, at *9 (S.D.N.Y. Nov. 15, 2012) (Freeman, M.J.) (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims").

## D.   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18–19 (S.D.N.Y. Sept. 28, 2007) (Pauley, D.J.) (quoting *Denney v.*

*Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). "The named plaintiffs must possess the same interests and suffer the same injuries as the class members." *Lizondro-Garcia*, 300 F.R.D. at 175 (internal citations omitted).  "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (Irizarry, D.J.) (internal quotation marks and citation omitted).

Plaintiff Manley does not have interests that are antagonistic to or at odds with putative class members' interests. *See Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D.N.Y. May 29, 2014) (Pitman, M.J.) (holding adequacy met where "counsel for Plaintiffs represents that named Plaintiffs have no conflicts with any of the class members and have actively participating in discovery and settlement negotiations"). Plaintiffs' counsel is experienced in prosecuting wage and hour class and collective actions and does not have interests contrary to those of the class. *See, e.g., Carino v. Broadway & 166, LLC et al.*, No. 10 Civ. 8506, Docket No. 35 at *4 (S.D.NY. May 1, 2013) (recognizing that Louis Pechman was able to use his "considerable expertise in this wage and hour case to achieve an excellent result for the Class in a highly efficient manner"); *In re Chickie's & Pete's Wage & Hour Litig.*, 2014 U.S. Dist. LEXIS 30366, at *1 (E.D. Pa. Mar. 7, 2014) (consolidating cases and appointing Louis Pechman as lead counsel) (E.D.Pa. Mar. 28, 2013).

## E.    Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594, 623 (1997). That Plaintiffs contend they easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) (satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality").

### 1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (internal quotation marks and citation omitted).

The Second Circuit in *Moore v. Painewebber, Inc.* stated that "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 306 F.3d 1247, 1252 (2d Cir. 2002).  The critical consideration is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001)). Where Plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. Apr. 26, 2005).

Here, Plaintiffs contend that all putative class members are unified by common factual allegations and common legal theory.  All class members allege that they were subject to Defendants' violations of the NYLL law, including failure to provide minimum wages; failure to pay overtime pay; spread of hours pay, misappropriation of gratuities; and unlawful deductions from wages.  Where, "Defendants' practices applied to the members of the putative NYLL class uniformly, questions regarding the

legality of those policies are about the most perfect questions for class treatment."
*Lizondro-Garcia*, 300 F.R.D. at 177 (internal citations omitted); *see also Sanchez v. JMP Ventures, L.L.C.*, 2015 U.S. Dist. LEXIS 16026, *8–9 (S.D.N.Y. Feb. 10, 2015) (Gorenstein, M.J.) (common questions predominate where class members' "legal theories under the NYLL are the same" and "this commonality is sufficient to overcome any minor variations in the Plaintiffs' individual situations and the need for individualized damages calculations.").

### 2. Superiority

The second part of the Rule 23(b)(3) analysis examines whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Rule 23(b)(3) is satisfied for settlement purposes because common legal and factual issues predominate over individualized issues and resolution of the common issues for 276 putative class members in a single, coordinated proceeding is superior to two-hundred seventy-six individual lawsuits addressing the same legal and factual issues. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183 (W.D.N.Y. Apr. 29, 2005) (Payson, M.J.) ("The Court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").

As this Court explained in *Ballinger v. Advance Magazine Publishers. Inc.*:

> Rule 23(b)(3) sets forth four non-exclusive list of relevant factors to the superiority inquiry, 'the class members' interests in individually controlling the prosecution . . . of separate actions,' 'the extent and nature of any litigation concerning the controversy already begun by . . . class

> members,' 'the desirability or undesirability of concentrating
> the litigation of the claims in the particular forum' and the
> likely difficulties in managing a class action.

13 Civ. 4036, 2014 U.S. Dist. LEXIS 179538, at *13 (Pitman, M.J.) (S.D.N.Y. Dec. 29, 2014)
(quoting Fed. R. Civ. P. 23(b)(3)).

The class action device is superior in this case because the putative class
members have limited financial resources with which to prosecute individual actions.
Further, among the two hundred seventy-six putative class members, some worked for
a relatively short period of time and will receive a relatively modest recovery. A class
action is the only vehicle by which all Plaintiffs can adjudicate their claims. Plaintiffs
are also unaware of any pending individual lawsuits filed by putative class members
arising out of the same allegations. Utilizing the class device will conserve the
resources of both the putative class members and the judicial system. It will also avoid
waste and delay of repetitive proceedings. Finally, concentrating this litigation in the
Southern District of New York is appropriate because the acts that give rise to this
lawsuit occurred in this District.

In sum, all of Rule 23's requirements are met for the purpose of certifying a
settlement class. Thus, the Court should preliminarily certify the settlement class.

## III.   PECHMAN LAW GROUP PPLC SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs respectfully request that Pechman Law Group PLLC be appointed as
Class Counsel. Rule 23(g), which governs the standards and framework for appointing
class counsel for a certified class, sets forth four criteria the district court must consider
in evaluating the adequacy of proposed counsel:

> (1) the work counsel has done in identifying or investigating potential claims in
> the action;
>
> (2) counsel's experience in handling class actions, other complex litigation, and
> the types of claims asserted in the action;

(3)  counsel's knowledge of the applicable law; and

(4)  the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) (advisory committee's note.)

Plaintiffs' counsel meets all of these criteria.  As set forth in the Declaration of Louis Pechman, Pechman Law Group PLLC has done substantial work identifying, investigating, prosecuting, and settling wage and hour class actions, and the lawyers assigned to this matter are experienced in wage and hour litigation and qualified to represent the interests of the Class.  Pechman Decl. at ¶ 38.

## IV.   THE PROPOSED CLASS NOTICE IS APPROPRIATE

### a.     The Proposed Class Notice Satisfies Due Process

The content of the Proposed Notice, which is attached to the Settlement Agreement as Exhibit A, fully complies with due process and Rule 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notice satisfies each of these requirements. Accordingly, the detailed information in the Proposed Notice will put Rule 23 Class Members on notice of the proposed Settlement and is well within the requirements of Rule 23(e)(1). In this regard, courts have approved class notices even when they provided only general information about a settlement. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 46, 60 (S.D.N.Y. Jul. 19, 1997) (Pollack, D.J.) ("[S]ettlement notices need only describe the terms of the settlement generally.").

## V.   THE FLSA SETTLEMENT

Because Plaintiffs' FLSA claims are distinct from the NYLL wage and hour law claims brought under Rule 23, Plaintiffs seek approval of the settlement of the FLSA claims separately. "The burden is significantly less than that required to sustain a class certification motion under Rule 23 because the FLSA's opt-in provision merely provides an opportunity for potential Plaintiffs to join the action and is only a preliminary determination as to which potential Plaintiffs may in fact be similarly situated." *Karic v Major Auto. Cos.,* 799 F. Supp.2d 219, 224 (E.D.N.Y. 2011) (Pollack, M.J.); *see also McKenna v. Champion Int'l Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984) (FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date").

Plaintiffs will seek approval of the settlement of the FLSA claims separately from their Rule 23 claims. When Plaintiffs file their motion for final approval of the Settlement, they will also seek final approval of the FLSA settlement.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated: New York, New York
       October 22, 2015

PECHMAN LAW GROUP PLLC

By: _____
    Louis Pechman
    Vivianna Morales
    488 Madison Avenue, 11th Floor
    New York, NY  10022
    pechman@pechmanlaw.com
    morales@pechmanlaw.com
    (212) 583-9500
    *Attorneys for Plaintiffs*