```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

EDWARD MANLEY, on behalf of        :
himself and all others
similarly situated, et al.,        :
                                         14 Civ. 1693 (HBP)
              Plaintiffs,          :

                                         OPINION
     -against-                     :     AND ORDER

MIDAN REST. INC. d/b/a             :
"Moran's Chelsea," et al.,
                                   :
              Defendants.
                                   :
----------------------------------X
```

PITMAN, United States Magistrate Judge:


I.  Introduction


          Plaintiff Edward Manley, on behalf of himself and all
others similarly situated, commenced this action pursuant to the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and
the New York Labor Law ("NYLL") §§ 190 et seq. against defendants
Midan Rest. Inc. d/b/a Moran's Chelsea ("Moran's") and Colleen
Lydon to recover unpaid wages, spread-of-hours pay, unlawful
deductions and penalties for failing to provide wage statements
and notices.  Plaintiff brought the action as a collective action
pursuant to 29 U.S.C. § 216(b) with respect to the FLSA claims
and as a class action with respect to the NYLL claims.  Following
the filing of the complaint, opt-in plaintiffs Jennifer Kuehn,

Richard Rodriguez, Chris Hodges, Michael Chang and Benjamin Sperry consented to join the FLSA collective action.

By letter to the Honorable Kevin N. Fox, United States Magistrate Judge, dated July 1, 2015, the parties informed the Court that they had reached a tentative settlement of the FLSA collective action and the NYLL class action (Endorsed Letter, dated July 2, 2015 (Docket Item ("D.I.") 32)). The parties subsequently memorialized their agreement in a written settlement agreement (the "Settlement Agreement").

Plaintiffs now move for preliminary approval of the Settlement Agreement and other related relief. Specifically, plaintiffs seek an Order (1) conditionally certifying a NYLL class pursuant to Rule 23(a) and (b)(3); (2) appointing Pechman Law Group PLLC as class counsel; (3) preliminarily approving the Settlement Agreement; (4) approving plaintiffs' proposed Notice of Class Action Settlement (the "Proposed Notice") and (5) scheduling a Fairness Hearing to consider the parties' motion for final approval of the settlement, attorneys' fees and costs and a service award to Manley (Notice of Motion, dated Oct. 22, 2015 (D.I. 33); Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, dated Oct. 22, 2015 (D.I. 34) ("Pl. Memo"), at 1). The parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. §

2

636(c) (Notice, Consent and Reference of a Civil Action to a Magistrate Judge, dated June 25, 2014 (D.I. 20)).

For the reasons set forth below, plaintiffs' motion is granted in all respects.

II.  Facts

    A.  Relevant Factual and
        Procedural Background

Manley commenced this action on March 12, 2014.  The complaint alleges that the members of the FLSA collective and the putative NYLL class are or were employed by defendants as "waitstaff," which is defined as "waiters, runners, busboys, and bartenders" (Complaint, dated Mar. 12, 2014 (D.I. 2) ("Compl."), ¶¶ 13, 25, 27; Declaration of Louis Pechman, dated Oct. 22, 2015 (D.I. 35) ("Pechman Decl."), ¶ 9).[1]  The complaint further alleges that defendants (1) failed to pay the minimum wage by improperly applying the FLSA and the NYLL's tip credit allowance; (2) failed to pay the required overtime premium; (3) failed to pay spread-of-hours pay; (4) unlawfully retained portions of the waitstaff's tips for banquet work; (5) failed to reimburse

---

[1] The FLSA collective includes waitstaff that worked for defendants on or after March 12, 2011, and the NYLL class includes waitstaff that worked for defendants on or after March 12, 2008 (Compl., ¶¶ 13, 25).

waitstaff for purchases of materials necessary to complete their work duties and (6) failed to provide waitstaff with wage statements and notices required by the New York Wage Theft Prevention Act (Compl., ¶¶ 31-117).

At the Rule 16 Initial Conference in this case, the parties agreed to exchange limited discovery to assist in developing their claims and defenses and in furtherance of class-wide settlement discussions (Pechman Decl., ¶¶ 14-15). Defendants produced over 1,000 documents relating to plaintiffs' claims, including a sample of payroll summaries for all putative class members, the end-of-year paystub of each putative class member, banquet contracts, tip records and timekeeping records (Pechman Decl., ¶ 15). Plaintiffs also produced their own payroll records and communications relating to Moran's (Pechman Decl., ¶ 17). After reviewing defendants' records, plaintiffs' counsel performed individual damages calculations for the 276 putative class members (Pechman Decl., ¶¶ 18-20). According to plaintiffs' calculations, plaintiffs and the putative class members are owed a total of approximately $676,629.46 in actual damages for their FLSA and NYLL claims (Pechman Decl., ¶ 33).[2]

---

[2]Counsel for plaintiffs does not allocate this amount between the FLSA and the NYLL.

4

In June 2015, the parties engaged in an arms-length negotiation during a thirteen-hour mediation session with mediator Ruth Raisfield, Esq., whom plaintiffs describe as a "well-known and experienced mediator in wage and hour cases" (Pechman Decl., ¶¶ 24-29; see also Endorsed Letter, dated July 2, 2015 (D.I. 32)).  At the mediation, following a "vigorous exchange regarding their respective claims and defenses," the parties reached an agreement on the settlement amount and other key terms (Pechman Decl., ¶ 27).  The parties thereafter negotiated the remaining terms of the settlement, which are memorialized in the Settlement Agreement (Pechman Decl., ¶¶ 27-28 & Ex. 1).

B.  The Settlement Agreement

The Settlement Agreement provides that defendants, without conceding the validity of plaintiffs' claims or admitting liability, agree to create a common settlement fund of $912,500.00 (Pechman Decl., Ex. 1, §§ 3.1, 4.2(A)).  From the settlement fund, Manley will receive a $15,000.00 service award, a settlement claims administrator will receive an estimated $15,500.00 to set up and make distributions from the fund and counsel for plaintiffs will receive attorney's fees and costs, subject to the Court's approval, and not to exceed 33 1/3 percent

of the total settlement amount (Pechman Decl., ¶¶ 30-34 & Ex. 1, §§ 3.1, 3.2, 3.3(A)).[3]

The Settlement Agreement provides that the claims administrator will allocate the remainder of the settlement proceeds on a <u>pro rata</u> basis as follows:

> (i) compute the total calculated damages for each Participating Class Member from March 12, 2008 through June 30, 2014 based on Plaintiff's analysis of Defendants' records; (ii) divide the total calculated damages for each Participating Class Member by the total calculated damages of all Participating Class Members; (iii) multiply the amount derived in (ii) by the amount of the Net Settlement Fund to compute the Participating Class Member's total settlement amount.

(Pechman Decl., Ex. 1, § 3.3(B)(1)(b)).  For tax purposes, settlement checks paid to class members will be allocated 40 percent to W-2 wage payments and 60 percent to 1099 non-wage payments for interest, liquidated damages and statutory penalties (Pechman Decl., Ex. 1, § 3.4(A)).  In return for the settlement payments, each individual who opts in to the collective action and the class will release defendants from all wage and hour claims that were brought or that could have been brought in this action (Pechman Decl., Ex. 1, § 4.1).[4]  Finally, if more than ten

---

[3]The Settlement Agreement also states that deductions will be made from the total settlement amount for "any fees associated with establishing, investing, or liquidating the Settlement Fund" (Pechman Decl., Ex. 1, § 3.3(A)).

[4]The Settlement Agreement further provides that Manley (and
(continued...)

percent of the putative class members opt out, defendants will
have the right to revoke the Settlement Agreement pursuant to
certain conditions (Pechman Decl., Ex. 1, § 2.6).

III.  Analysis

    A.  Conditional Certification
        of the NYLL Rule 23 Class

      Plaintiffs request that the Court conditionally cer-
tify, for the purpose of settlement only, a class pursuant to
Rule 23 consisting of all individuals who work or worked for
defendants as "tipped employees" including "servers, bussers, and
bartenders" between March 12, 2008 and June 30, 2014 (Pl. Memo at
3; Pechman Decl., ¶¶ 9, 39 & Ex. 2, ¶ 4).

      "Before certification is proper for any purpose --
settlement, litigation, or otherwise -- a court must ensure that
the requirements of Rule 23(a) and (b) have been met." Denney v.
Deutsche Bank AG, 443 F.3d 253, 270 (2d Cir. 2006); accord Long

---

    [4](...continued)
Manley alone) agrees to release not only his wage and hour claims
against defendants, but also all known and unknown "actions,
causes of action, suits, debts, dues, sums of money, accounts,
reckonings, bonds, bills, specialties, covenants, contracts,
controversies, agreements, promises, judgments, obligations,
union grievances, claims, charges, complaints, appeals and
demands whatsoever, in law or equity, which he may have against
[defendants] as of the date of execution of this Agreement"
(Pechman Decl., Ex. 1, § 4.1(C)).

v. HSBC USA Inc., 14 Civ. 6233 (HBP), 2015 WL 5444651 at *5
(S.D.N.Y. Sept. 11, 2015) (Pitman, M.J.); Cohen v. J.P. Morgan
Chase & Co., 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).  Class
certification under Rule 23(a) requires that

> (1) the class is so numerous that joinder of all mem-
> bers is impracticable; (2) there are questions of law
> or fact common to the class; (3) the claims . . . of
> the representative parties are typical of the claims .
> . . of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the
> class.

"If each of these four threshold requirements are met,
class certification is appropriate if the action also satisfies
one of the three alternative criteria set forth in Rule 23(b)."
Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *5; accord
Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 174 (S.D.N.Y. 2014)
(Pitman, M.J.).  Here, plaintiffs argue that class certification
is proper under Rule 23(b)(3), which provides that a class action
may be maintained where:

> the questions of law or fact common to class members
> predominate over any questions affecting only individ-
> ual members, and . . . a class action is superior to
> other available methods for fairly and efficiently
> adjudicating the controversy.

The party seeking class certification bears the burden
of establishing each of these elements by a "preponderance of the
evidence."  Teamsters Local 445 Freight Div. Pension Fund v.
Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008); see also

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Fedotov
v. Peter T. Roach & Assocs., P.C., 354 F. Supp. 2d 471, 478
(S.D.N.Y. 2005) (Haight, D.J.).  Although the Court of Appeals
has "directed district courts to apply Rule 23 according to a
liberal rather than a restrictive interpretation," In re NASDAQ
Market-Makers Antitrust Litig., 169 F.R.D. 493, 504 (S.D.N.Y.
1996) (Sweet, D.J.), citing, inter alia, Korn v. Franchard Corp.,
456 F.2d 1206, 1208-09 (2d Cir. 1972), class certification should
not be granted unless, after a "'rigorous analysis,'" the court
is satisfied that Rule 23's requirements have been met.  Spagnola
v. Chubb Corp., 264 F.R.D. 76, 92 (S.D.N.Y. 2010) (Baer, D.J.),
quoting In re Initial Pub. Offering Secs. Litig., 471 F.3d 24, 33
(2d Cir. 2006).  Any doubts concerning the propriety of class
certification should be resolved in favor of class certification.
Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *6, citing
Levitt v. J.P. Morgan Secs., Inc., 710 F.3d 454, 464 (2d Cir.
2013).

    1.  Rule 23(a)'s Requirements

      a.  Numerosity

Rule 23(a) requires that the members of the proposed
class be "so numerous that joinder of all members is impractica-

ble."  Here, plaintiffs' counsel represents that it has identi-
fied 276 members of the putative class (Pechman Decl., ¶¶ 20,
35).  This clearly meets the numerosity requirement. Alcantara v.
CNA Mgmt., Inc., 264 F.R.D. 61, 64 (S.D.N.Y. 2009) (Jones, D.J.)
("[N]umerosity is generally presumed when the prospective class
consists of 40 members or more."); accord Consol. Rail Corp. v.
Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995);
Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 174.

       b.  Commonality

      Rule 23(a) also requires the existence of questions of
law or fact common to the class.  The Supreme Court has recently
emphasized that "[c]ommonality requires the plaintiff to demon-
strate that the class members 'have suffered the same injury.'"
Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, ---, 131 S. Ct.
2541, 2551 (2011), quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147,
157 (1982).  "[S]ince [a]ny competently crafted class complaint
literally raises common questions," I must assess whether the
common questions are capable of "generat[ing] common answers apt
to drive the resolution of the litigation."  Wal-Mart Stores,
Inc. v. Dukes, supra, 564 U.S. at ---, 131 S. Ct. at 2551 (inter-
nal quotation marks and citations omitted; emphasis in original);
accord Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 175.

"[P]laintiffs may meet the commonality requirement where the individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct by a single system.'"  Fox v. Cheminova, Inc., 213 F.R.D. 113, 126 (E.D.N.Y. 2003), quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam).  "Even a single common legal or factual question will suffice."  Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 162 (S.D.N.Y. 2014) (Oetken, D.J.) (citation and quotation marks omitted).

     Plaintiffs claim, and defendants do not dispute, that class members worked as tipped employees between March 12, 2008 and June 30, 2014.  Plaintiffs also identify several questions common to the putative class:  whether defendants (1) improperly applied the tip credit; (2) paid spread-of-hours pay; (3) misap-propriated gratuities; (4) made unlawful deductions from class members' wages and (5) satisfied the NYLL's requirements with respect to wage statements and wage notices (Pl. Memo, at 20-21). This is sufficient to satisfy the commonality requirement.  See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011) ("[T]he District Court properly found there to be questions of law or fact common to the class . . . since the Plaintiffs' NYLL class claims all derive from the same compensation policies and tipping practices."); Sanchez v. JMP

11

Ventures, L.L.C., 13 Civ. 7264 (GWG), 2015 WL 539506 at *3
(S.D.N.Y. Feb. 10, 2015) (Gorenstein, M.J.); Lizondro-Garcia v.
Kefi LLC, supra, 300 F.R.D. at 175.

      c.  Typicality

      Rule 23(a)'s third requirement, typicality, ensures
that "'maintenance of a class action is economical and [that] the
named plaintiff's claim and the class claims are so interrelated
that the interests of the class members will be fairly and
adequately protected in their absence.'"  Marisol A. v. Giuliani,
supra, 126 F.3d at 376 (alteration in original), quoting Gen.
Tel. Co. v. Falcon, supra, 457 U.S. at 157 n.13.  "The typicality
requirement is satisfied where 'each class member's claim arises
from the same course of events and each class member makes
similar legal arguments to prove the defendant's liability.'"
Long v. HSBC USA Inc., supra, 2015 WL 5444651 at *7, quoting,
inter alia, In re Flag Telecom Holdings, Ltd. Secs. Litig., 574
F.3d 29, 35 (2d Cir. 2009); accord Marisol A. v. Giuliani, supra,
126 F.3d at 376.

      Plaintiffs satisfy the typicality requirement of Rule
23(a) because their claims arise from the same factual and legal
circumstances that form the bases of the putative class members'
claims.  Specifically, plaintiffs and members of the putative

class worked as tipped employees for defendants and claim they were subjected to the same overtime, spread-of-hours, wage deduction, tipping and wage notice practices (Pl. Memo, at 22). This is sufficient to satisfy the typicality requirement.

    d.  <u>Adequacy</u>

To satisfy Rule 23(a)'s adequacy requirement, "the named plaintiffs must 'possess the same interest[s] and suffer the same injur[ies] as the class members.'" <u>In re Literary Works in Elec. Databases Copyright Litig.</u>, 654 F.3d 242, 249 (2d Cir. 2011) (alterations in original), <u>quoting Amchem Prods., Inc. v. Windsor</u>, <u>supra</u>, 521 U.S. at 625-26. "Adequate representation is a twofold requirement:  class counsel must be qualified and able to conduct the proposed litigation, and the class representatives must not have interests antagonistic to those of the other class members." <u>Fox v. Cheminova, Inc.</u>, <u>supra</u>, 213 F.R.D. at 127, <u>citing In re Drexel Burnham Lambert Grp., Inc.</u>, 960 F.2d 285, 291 (2d Cir. 1992); <u>accord Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.</u>, 502 F.3d 91, 99 (2d Cir. 2007).

Plaintiffs' counsel represents that Manley has no known conflicts with any of the class members (Pechman Decl., ¶ 37). Additionally, plaintiffs' counsel has cited two relatively recent opinions that acknowledge plaintiffs' counsel's record of compe-

tence and experience in wage and hour class actions (Penchman
Decl., ¶ 5, <u>citing</u>, <u>inter alia</u>, <u>Carino v. Broadway & 166, LCC</u>, 10
Civ. 8506, Docket Item 35, at 4 (S.D.N.Y. May 1, 2013) (Fox,
M.J.); <u>In re Chickie's & Pete's Wage & Hour Litig.</u>, 12 Civ. 6820,
Docket Item 80, at 1 (E.D. Pa. Mar. 28, 2013)).

Accordingly, I conclude that plaintiffs satisfy the
adequacy requirement of Rule 23(a)(4).

e.   The Implied Requirement
     of Ascertainability

Ascertainability is not expressly required under the
terms of Rule 23, but is an implied element of class certifica-
tion.  As explained by the late Honorable Harold Baer, United
States District Judge, in <u>Fears v. Wilhelmina Model Agency, Inc.</u>,
02 Civ. 4911 (HB), 2003 WL 21659373 at *2 (S.D.N.Y. July 15,
2003):

> "[W]hile Rule 23(a) does not expressly require that a
> class be definite in order to be certified, a require-
> ment that there be an identifiable [aggrieved] class
> has been implied by the courts."  <u>In re Methyl Tertiary</u>
> <u>Butyl Ether ("MTBE") Prods. Liability Litig.</u>, 209
> F.R.D. 323, 336 (S.D.N.Y. 2002) (internal quotes and
> citations omitted); <u>Dunnigan v. Metropolitan Life Ins.</u>
> <u>Co.</u>, 214 F.R.D. 125, 135 (S.D.N.Y. 2003).  "An identi-
> fiable class exists if its members can be ascertained
> by reference to objective criteria."  <u>MTBE Prods.</u>, 209
> F.R.D. at 336.  Membership should not be based on
> subjective determinations, such as the subjective state
> of mind of a prospective class member, but rather on
> objective criteria that are administratively feasible

14

> for the Court to rely on to determine whether a partic-
> ular individual is a member of the class. Id. Fur-
> ther, the Court "must be able to make this determina-
> tion without having to answer numerous fact-intensive
> inquiries." Id. at 336 n.20 (quoting Daniels v. City
> of New York, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).

See also Manual for Complex Litigation § 21.222 at 270 (4th ed. 2004) ("Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable."). In this case, plaintiffs' counsel represents, and defendants do not dispute, that defendants produced a sampling of payroll summaries of all putative class members and the final end-of-year paystub issued to each putative class member, which allowed plaintiffs' counsel to identify 276 putative class members and to calculate the class members' individual damages (Pechman Decl., ¶¶ 15, 19-20). Because plaintiffs can identify the class by reviewing defendants' payroll records, I conclude that the implied ascertainability requirement of Rule 23 is met here.

2. Rule 23(b)(3)'s Requirements

As discussed above, Rule 23(b)(3) requires that a plaintiff seeking to represent a class establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and
efficiently adjudicating the controversy."

        a.   <u>Predominance</u>

     The Court of Appeals for the Second Circuit explained
the predominance requirement of Rule 23(b)(3) in <u>Moore v.
PaineWebber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002):

> "The Rule 23(b)(3) predominance inquiry tests
> whether proposed classes are sufficiently cohesive to
> warrant adjudication by representation."  <u>Amchem
> Prods., Inc. v. Windsor</u>, 521 U.S. 591, 623, 117 S. Ct.
> 2231, 138 L. Ed. 2d 689 (1997).  It is a more demanding
> criterion than the commonality inquiry under Rule
> 23(a).  <u>Id</u>. at 623-24, 117 S. Ct. 2231.  Class-wide
> issues predominate if resolution of some of the legal
> or factual questions that qualify each class member's
> case as a genuine controversy can be achieved through
> generalized proof, and if these particular issues are
> more substantial than the issues subject only to indi-
> vidualized proof.  [<u>In re Visa Check/MasterMoney Anti-
> trust Litig.</u>, 280 F.3d 124, 136 (2d Cir. 2001)].

<u>See also</u> <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 549 (2d Cir. 2010)
("Economies of time, effort, and expense in fully resolving each
plaintiff's claim will only be served, and the predominance
requirement satisfied, . . . if the plaintiffs can show that some
. . . questions can be answered with respect to the members of
the class as a whole through generalized proof and that those
common issues are more substantial than individual ones." (inter-
nal quotations marks, brackets and citations omitted)).

Plaintiffs' counsel argues that the predominance requirement is satisfied because the class is unified by common factual and legal issues:  "All class members allege that they were subject to Defendants' violations of the NYLL . . . , including failure to provide minimum wages; failure to pay overtime pay; [failure to pay] spread of hours pay; misappropriation of gratuities; and unlawful deductions from wages" (Pl. Memo, at 24).  Again, defendants do not dispute plaintiffs' counsel's contention.

The issues identified by plaintiffs' counsel are the central issues in this litigation and all relate to the general practices of defendants with respect to their tipped employees. Accordingly, the predominance requirement is met. Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 177 ("Because defendants' practices applied to members of the putative NYLL class uniformly, questions regarding the legality of those policies 'are about the most perfect questions for class treatment.'"), quoting Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (McMahon, D.J.); accord Shahriar v. Smith & Wollensky Rest. Grp., Inc., supra, 659 F.3d at 253; Brown v. Kelly, 609 F.3d 467, 484 (2d Cir. 2010).

b.  <u>Superiority</u>

Rule 23(b)(3) also requires plaintiffs to demonstrate that class-wide adjudication is "superior to other available methods for fairly and efficiently adjudicating the controversy." In making this determination, the court must balance "the advantages of a class action against those of alternative available methods of adjudication." <u>Anwar v. Fairfield Greenwich Ltd.</u>, 289 F.R.D. 105, 114 (S.D.N.Y. 2013) (Marrero, D.J.), <u>vacated on other grounds</u> <u>sub</u>. <u>nom.</u>, <u>St. Stephen's Sch. v. PricewaterhouseCoopers Accountants N.V.</u>, 570 F. App'x 37 (2d Cir. 2014) (summary order). Rule 23(b)(3) sets forth four non-exhaustive factors relevant to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

The superiority requirement is met here.  First, litigation by way of a class action is more economically sensible due to the putative class members' limited financial resources and the relatively modest size of many of the members' individual recovery (Pl. Memo, at 26).  Accordingly, "[a] class action is likely the only vehicle by which all plaintiffs can, as a practi-

cal matter, adjudicate their state law claims." Long v. HSBC USA
Inc., supra, 2015 WL 5444651 at *9; see Iglesias-Mendoza v. La
Belle Farm, Inc., supra, 239 F.R.D. at 374.  Second, plaintiffs
are unaware of any pending litigation by individual class members
arising out of the same allegations presented here (Pl. Memo, at
26).  Third, concentrating this litigation in the Southern
District of New York is appropriate because "the acts that gave
rise to this lawsuit occurred in this District" (Pl. Memo, at
26).  Finally, class adjudication as opposed to multiple individ-
ual actions will conserve judicial resources and avoid the waste
and delay of repetitive proceedings on the same issues.

Accordingly, for all the above reasons, I conditionally
certify pursuant to Rule 23(a) and (b)(3) a class consisting of
all individuals who worked for defendants as "tipped employees,"
including "servers, bussers, and bartenders," between March 12,
2008 and June 30, 2014.

### B.  Appointment of Class Counsel

Rule 23(c)(1)(B) provides that "[a]n order that certi-
fies a class action must . . . appoint class counsel under Rule
23(g)."  Louis Pechman, Esq., lead counsel for plaintiffs,
requests that I designate his firm, Pechman Law Group PLLC, as
counsel for the NYLL class.

Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed.R.Civ.P. 23(g)(1)(B).

As discussed in Part III.A.d, supra, plaintiffs' counsel has experience litigating wage-and-hours cases, including having served as lead counsel in past class actions, and is knowledgeable concerning the applicable law (Pechman Decl., ¶¶ 5-8, 38; see also Carino v. Broadway & 166, LCC, supra, 10 Civ. 8506, Docket Item 35, at 4).  Moreover, Pechman Law Group PLLC has done substantial work in identifying, investigating, prosecuting and settling the action, and Louis Pechman has represented Manley in this suit from its inception (see Pechman Decl., ¶ 38).

Accordingly, Pechman Law Group PLLC is appointed counsel for the class.  See Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 178 (appointing the plaintiffs' counsel as lead counsel in a NYLL class action where the plaintiffs' counsel had "represented the named plaintiffs in this suit from its incep-

tion" and "performed as lead or co-counsel in litigating and settling other wage and hour actions").

C.   Preliminary Approval
     of the Settlement Agreement

Plaintiffs also seek preliminary approval of the Settlement Agreement, which would resolve the claims brought on behalf of the FLSA collective and the NYLL class.

Pursuant to Rule 23(e), the settlement of a class action is not effective until judicially approved.  Although there is a general policy favoring settlements, the court may approve a class action settlement only if it is "fair, adequate, and reasonable, and not a product of collusion."  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).  "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005), citing D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

In assessing procedural fairness, there is a "presump-tion of fairness, reasonableness, and adequacy as to the settle-ment where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaning-

ful discovery.'" McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 116.

In assessing whether a settlement is substantively fair, reasonable and adequate, courts in this Circuit use the nine-factor test set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). McReynolds v. Richards-Cantave, supra, 588 F.3d at 804; accord Charron v. Wiener, 731 F.3d 241, 247 (2d Cir. 2013); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (A. Carter, D.J.). Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

McReynolds v. Richards-Cantave, supra, 588 F.3d at 804, quoting City of Detroit v. Grinnell Corp., supra, 495 F.2d at 463.

Preliminary approval is the first step in the settlement of a class action whereby the court "must preliminarily determine whether notice of the proposed settlement . . . should

be given to class members in such a manner as the court directs, and an evidentiary hearing scheduled to determine the fairness and adequacy of settlement."  Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.25 (4th ed. 2002) (internal quotation omitted); accord Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 179; Davis v. J.P. Morgan Chase & Co., 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011).

Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  Clark v. Ecolab, Inc., Nos. 07 Civ. 8623 (PAC) et al., 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing Herbert B. Newberg & Alba Conte, Newberg on Class Actions ("Newberg") § 11.25 (4th ed. 2002)).  Nevertheless, courts often grant preliminary settlement approval without requiring a hearing or a court appearance.  See Hernandez v. Merrill Lynch & Co., Inc., No. 11 Civ. 8472 (KBF)(DCF), 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  In re Traffic Exec. Ass'n, 627 F.2d 631, 634 (2d Cir. 1980); see Newberg § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); see also Girault v. Supersol 661 Amsterdam, LLC, No. 11 Civ. 6835 (PAE), 2012 WL 2458172, at *1 (S.D.N.Y. June 28, 2012) (granting preliminary approval where the "proposed Settlement Agreement [was] within the range of possible settlement approval, such that notice to the Class [was] appropriate"); Danieli v. IBM, No. 08 Civ. 3688, 2009 WL

> 6583144, at *4–5 (S.D.N.Y. Nov. 16, 2009) (granting
> preliminary approval where settlement "has no obvious
> defects" and proposed allocation plan is "rationally
> related to the relative strengths and weaknesses of the
> respective claims asserted").  "If the proposed settle-
> ment appears to fall within the range of possible
> approval, the court should order that the class members
> receive notice of the settlement." <u>Yuzary</u>, 2013 WL
> 1832181, at *1 (internal quotation marks and citation
> omitted).

<u>Tiro v. Pub. House Invs., LLC</u>, 11 Civ. 7679 (CM), 11 Civ. 8249

(CM), 2013 WL 2254551 at *1 (S.D.N.Y. May 22, 2013) (McMahon,

D.J.).

Applying the foregoing principles, including the

<u>Grinnell</u> factors "to the extent they are relevant at the prelimi-

nary stage," <u>Long v. HSBC USA Inc.</u>, <u>supra</u>, 2015 WL 5444651 at *3,

I conclude, based on plaintiffs' memorandum of law, the declara-

tion of Louis Pechman, Esq. and my own review of the Settlement

Agreement, that there is probable cause to believe that the

Settlement Agreement is fair, reasonable and adequate.

First, litigation of this matter, which includes

approximately 276 putative class members and both federal and

state claims, through trial would be complex, costly and long.

<u>Henry v. Little Mint, Inc.</u>, 12 Civ. 3996 (CM), 2014 WL 2199427 at

*7 (S.D.N.Y. May 23, 2014) (McMahon, D.J.) ("'Most class actions

are inherently complex and settlement avoids the costs, delays

and multitude of other problems associated with them.'"), <u>quoting</u>

24

<u>In re Austrian & German Bank Holocaust Litig.</u>, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (Kram, D.J.).

Second, discovery has advanced sufficiently to allow the parties to resolve the case responsibly.  Plaintiffs' counsel interviewed plaintiffs, the parties have exchanged informal discovery and plaintiffs' counsel has analyzed defendants' records to calculate the damages owed to each member of the putative class.  <u>Long v. HSBC USA Inc.</u>, <u>supra</u>, 2015 WL 5444651 at *3 (finding the third <u>Grinnell</u> factor was met where the parties had engaged in informal discovery even though settlement was reached before the action was commenced).  Additionally, the parties engaged in a thirteen-hour mediation with an experienced, neutral, third-party mediator before reaching their settlement.

Third, plaintiffs would face real risks with respect to establishing liability and damages, as well as maintaining the class action, if the case proceeded to trial.  Defendants have potentially strong defenses to plaintiffs' allegations that defendants misappropriated plaintiffs' tips as well as plaintiffs' allegations that defendants' actions were willful (Pechman Decl., ¶¶ 16, 22, 33; Pl. Memo, at 14-16).  Further, if this case were to continue to trial, defendants would contend that class certification would be inappropriate because determining liabil-

ity and damages would require individual determinations for each putative class member (Pl. Memo, at 16).

Fourth, defendants sold Moran's in 2014 and, at the mediation, Lydon stated that there are multiple investors and other creditors that must be repaid from the proceeds of the sale (Pechman Decl., ¶ 26; Pl. Memo, at 16-17).  Accordingly, defendants' ability to satisfy a greater judgment is unclear.

Fifth, the settlement fund is a significant percentage of plaintiffs' best possible recovery; given the risks of litigation, the amount of the settlement weighs in favor of approving the settlement.  Plaintiffs' counsel has calculated that the putative class is owed $676,629.46 in back pay, and the total settlement amount is $912,500.00.  After deducting the service award, fees for the settlement claims administrator and attorneys' fees and costs, the class members will receive approximately $577,833.33, which is more than 85% of their back wages. This substantial recovery weighs in favor of approving the settlement.  Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 180 ("An award of $315,000 appears fair, reasonable and adequate because even after attorney's fees, service awards, and administrative costs, plaintiffs would receive nearly all of their actual damages . . . . [and] the award compensates plaintiffs

almost immediately and removes the uncertainty that litigation necessarily entails.").

Finally, the Settlement Agreement was reached after arms-length negotiations between counsel, which included a thirteen-hour mediation before a neutral, third-party mediator (Pechman Decl., ¶¶ 24-29).  In light of counsels' experience and conduct in this action, I have no reason to doubt that the terms of the Settlement Agreement are fair, reasonable and adequate.[5]

Accordingly, plaintiffs' motion for preliminary approval of the Settlement Agreement is granted and notice to the FLSA collective and the NYLL class is appropriate.

D.  Plaintiffs' Proposed Notice

Plaintiffs seek approval of the Proposed Notice accompanying their motion.  Pursuant to the Settlement Agreement, the designated settlement claims administrator will mail the Proposed Notice to the class members at each individual's last known mailing address (Pechman Decl., Ex. 1, § 2.4(B); Pl. Memo, at 7).

---

[5]Although plaintiffs do not apply for attorneys' fees and costs, the claims administrator's costs or the service award to Manley at this time, such items are routinely approved in district courts of this Circuit.  See, e.g., Lizondro-Garcia v. Kefi LLC, supra, 300 F.R.D. at 180; Chavarria v. N.Y. Airport Serv., LLC, 875 F. Supp. 2d 164, 177-79 (E.D.N.Y. 2012); Morris v. Affinity Health Plan, Inc., supra, 859 F. Supp. 2d at 624.

27

Additionally, if notices to any class members are returned as undeliverable, the claims administrator will use additional information provided by defendants to locate the addresses of those class members and will mail another copy to those individuals (Pechman Decl., Ex. 1, § 2.4(C)).

"Where, as here, the parties seek simultaneously to certify a settlement class and to settle a class action, the elements of Rule 23(c) notice (for class certification) are combined with the elements of Rule 23(e) notice (for settlement or dismissal)." In re Global Crossing Secs. & ERISA Litig., 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (Lynch, then D.J., now Cir. J); accord Shapiro v. JP Morgan Chase & Co., 11 Civ. 8331 (CM)(MHD), 11 Civ. 7961 (CM), 2014 WL 1224666 at *17 (S.D.N.Y. Mar. 24, 2014) (McMahon, D.J.); In re Citigroup Inc. Secs. Litig., 965 F. Supp. 2d 369, 380 (S.D.N.Y. 2013) (Stein, D.J.).

Pursuant to Rule 23(c)(2)(B), "the court must direct [that] class members [be provided with] the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See also Fed.R.Civ.P. 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.").  The notice must describe:

28

> (i) the nature of the action; (ii) the definition of
> the class certified; (iii) the class claims, issues, or
> defenses; (iv) that a class member may enter an appear-
> ance through an attorney if the member so desires; (v)
> that the court will exclude from the class any member
> who requests exclusion; (vi) the time and manner for
> requesting exclusion; and (vii) the binding effect of a
> class judgment on members under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).

I conclude that the process described by counsel for providing notice to the class comports with Rule 23(c)(2)(B).

As to the form and content of the Proposed Notice, I find that a majority of the Rule 23(c)(2)(B) requirements are satisfied. However, plaintiffs are directed to make the following modifications to the Proposed Notice.

First, plaintiffs are to add a new section that clearly informs recipients of the three options they have going forward -- specifically, that they may either (1) **participate in the settlement** and receive their <u>pro rata</u> share of the settlement fund after deductions are made for the service award, attorneys' fees and costs and administrative fees; (2) **not participate in the settlement** by affirmatively opting-out of the settlement or (3) **object to the settlement** by filing written objections with this Court and appearing at the Fairness Hearing. I direct that this information be added to a new section entitled "4. WHAT ARE

YOUR OPTIONS?" on page two of the Proposed Notice, and that current sections 4-15 be renumbered accordingly.

Second, plaintiffs are to add language to the section entitled "WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT" that explains that class members have the absolute right to opt out of the class, retain their own counsel and pursue their own claims individually in a separate litigation.  I also direct that this section be revised so that it accurately reflects that, under the Settlement Agreement, class members' release of claims against defendants covers all wage and hour claims that could have been asserted in this matter through the date the Settlement Agreement was executed by all parties (which is September 15, 2015).

Third, I direct that the section entitled "HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED" be revised so that it correctly states that class counsel will apply for attorneys' fees in the amount of $304,166.67, which is one-third of the $912,500.00 settlement amount.  This section shall also be revised to state that the claims administrator estimates that its costs will not exceed $15,500.00.

Fourth, I direct that additional language be added to the section entitled "HOW DO I OPT OUT OF THE SETTLEMENT CLASS?" explaining that, in addition to including the full name and address of a class member who chooses to opt out, the Settlement

Agreement requires that any opt-out letter must also include the individual's job title and telephone number(s).  I similarly direct that additional language be added to the section entitled "WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?" explaining that, in addition to including the full name, address and telephone number of a class member who chooses to object, the Settlement Agreement requires that any written objections must also include the individual's job title.

Finally, I direct that additional language be added to the section entitled "HOW DO I OPT OUT OF THE SETTLEMENT CLASS?" explaining what the consequences are of opting out of the settlement and how a class member's potential damages would be calculated if he or she opts out and chooses to pursue his or her rights and claims in a separate litigation.  This language should also warn class members that, if they choose to assert their claims in a separate litigation, defendants may have a statute-of-limitations (untimeliness) defense to all or part of their claims.  Lastly, this language should advise that, under the terms of the Settlement Agreement, defendants have the right to rescind the Settlement Agreement if more than ten percent of the putative class opts out.

Subject to the above-referenced modifications, the Proposed Notice is approved.

31

IV.   <u>Conclusion</u>

Accordingly, for all the foregoing reasons, plaintiffs' motion (Docket Item 33) is granted.  It is hereby ORDERED that:

1.  The proposed class is conditionally certified pursuant to Rule 23(a) and (b)(3).  Edward Manley is appointed class representative and Pechman Law Group PLLC is appointed class counsel.

2.  The Settlement Agreement is approved preliminarily.

3.  The Proposed Notice is approved provided the revisions set forth at pages 29-31, supra, are made.

4.  Within twenty-one (21) days following the date of this Order, defendants will provide the settlement claims administrator with a list, in electronic form, of the (1) names, (2) last known addresses and (3) social security numbers of each class member, and plaintiffs will provide the settlement claims administrator, after first providing this information to defendants for their review, the damages calculations for all class members based on plaintiffs' counsel's review of defendants' records.

5.  Within fifteen (15) days from receiving the information described in the preceding paragraph, the settlement

claims administrator shall mail the revised Proposed Notice to the class using the information provided by defendants.

6.  Class members will have sixty (60) days from the date the revised Proposed Notice is mailed to opt out of the settlement or file written objections.

7.  The Court shall hold a fairness hearing on August 15, 2016 at 2:00 p.m. at the United States District Court for the Southern District of New York, 500 Pearl Street, Courtroom 18A, New York, New York, 10007.

8.  No later than August 1, 2016, counsel for plain-tiffs shall move and file a memorandum of law in support of

final approval of the Settlement Agreement, an award of

attorneys' fees and costs, and a service award to Manley.[6]

Dated:   New York, New York
         March 30, 2016

                         SO ORDERED


                         _____
                         HENRY PITMAN
                         United States Magistrate Judge

Copies transmitted to:

All parties

---

[6]Counsel have stipulated to Rust Consulting serving as
claims administrator and seek to have me approve Rust Consulting
for that position.  Although I have no issue with the parties'
stipulation in this regard and do not disapprove of Rust
Consulting serving as claims administrator, I decline to take the
affirmative step of approving Rust Consulting as claims
administrator.  First, I am aware of no provision of law that
requires the court to approve a claims administrator.  Second,
the parties have provided no information concerning Rust
Consulting, and, therefore, I have no basis for assessing whether
Rust Consulting is competent to serve as a claims administrator.
Ballinger v. Advance Magazine Publishers, Inc., 13 Civ. 4036
(HBP), 2014 WL 7495092 at *8 n.3 (S.D.N.Y. Dec. 29, 2014)
(Pitman, M.J.).  I take no position with respect to the parties'
selection of Rust Consulting as claims administrator.