# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD MANLEY, on behalf of himself and all others
similarly situated,

                            Plaintiff,

     -against-

MIDAN REST. INC. d/b/a MORAN'S CHELSEA and
COLLEEN LYDON,

                        Defendants.

14 Civ. 01693 (HBP)

## SETTLEMENT AGREEMENT AND RELEASE

      This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff Edward Manley ("Plaintiff"), on behalf of himself and a class of individuals he seeks to represent in the above-captioned matter, and Midan Rest. Inc. d/b/a Moran's Restaurant (the "Company") and Colleen Lydon (together with the Company, "Defendants") (Plaintiff and Defendants collectively, the "Parties").

## RECITALS AND BACKGROUND

      WHEREAS, a Collective and Class Action Complaint was filed on March 12, 2014, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the New York Labor Law ("NYLL") for the alleged failure to pay certain wage, overtime and other monies to Plaintiff and all other employees who are allegedly similarly situated;

      WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Plaintiff and Defendants, including, claims asserted in *Manley v. Midan Rest. Inc. et al.* No. 14 Civ. 1693 (the "Litigation");

      WHEREAS, Defendants deny all of the allegations made by Plaintiff in the Litigation, and deny any and all liability and damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

      WHEREAS, the Parties have engaged in substantial discovery, including but not limited to reviewing thousands of documents exchanged by the Parties, analyzing personnel documents including wage notices, time and payroll records and conducting four depositions;

      WHEREAS, the Parties participated in a private mediation with Mediator Ruth Raisfeld on June 4, 2015, during which a settlement was reached;

      WHEREAS, without admitting or conceding any liability or damages whatsoever and

without admitting that wages, overtime and/or other amounts were improperly withheld from any employees, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, Plaintiff's Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiff and putative members of the collective and class actions, and based upon Plaintiff's counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiff's Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of Plaintiff and the putative members of the collective and class actions;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.2 **Acceptance Period.** "Acceptance Period" means the one hundred eighty (180) days that a Class Member has to endorse and cash a Settlement Check after it is mailed.

1.3 **CAFA Notice.** "CAFA Notice" means the notice to be sent by Defendants to the appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

1.4 **Class Counsel.** "Class Counsel" shall mean Louis Pechman, Esq. and Vivianna Morales, Esq. of Pechman Law Group PLLC, 488 Madison Avenue, Suite 1120, New York, NY 10022, (212) 583-9500.

1.5 **Class Members.** "Class Members" shall mean Plaintiff Edward Manley, Opt-In Plaintiffs Michael Chang, Jennifer Kuehn, Richard Rodriguez, Christopher Hodges and Benjamin Sperry and Servers, Bussers and Bartenders who worked for the Company during the Relevant Statutory Period as defined in Section 1.25.

1.6 **FLSA Collective Members.** "FLSA Collective Members" shall mean all Class Members who worked during the FLSA period, defined as March 12, 2011 through June 30, 2014.

1.7 **Court.** "Court" means the United States District Court for the Southern District of New York, the Honorable Henry B. Pitman presiding.

2

1.8 **Days.** "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

1.9 **Defendants.** "Defendants" shall mean Midan Rest. Inc. d/b/a Moran's Restaurant (the "Company" or "Corporate Defendant") and Colleen Lydon.

1.10 **Defendants' Counsel.** "Defendants' Counsel" shall mean Felice B. Ekelman, Esq. and Adam S. Gross, Esq. of Jackson Lewis P.C., 666 Third Avenue, New York, New York 10017.

1.11 **Effective Date.** "Effective Date" of the settlement shall mean the last of the following dates: (a) the date thirty (30) days after the entry of an order by the District Court granting final approval of the Settlement, if there are no appeals; or if there is an appeal of the Court's decision granting final approval, the next business day after all appeals are finally resolved in favor of final approval.

1.12 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.13 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement.

1.14 **Litigation.** "Litigation" means the above-captioned case.

1.15 **Named Plaintiff.** "Named Plaintiff" means Edward Manley.

1.16 **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Qualified Settlement Fund (as defined below in Section 1.23) after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Award to Named Plaintiff in return for a general release.

1.17 **Notice or Notices.** "Notice" or "Notices" means the Court–approved Notices of Proposed Settlement of Class Action and Collective Action Lawsuit.

1.18 **Objector.** "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.19 **Opt-In Plaintiffs.** "Opt-In Plaintiffs" means Michael Chang, Jennifer Kuehn, Richard Rodriguez, Christopher Hodges and Benjamin Sperry.

1.20 **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.21 **Participating Class Members.** "Participating Class Members" are all Class Members who do not submit a valid Opt-out Statement.

**1.22    Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.23    Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Settlement Amount paid by the Company.   The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.   Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

**1.24    Released Claims.** "Released Claims" mean all wage and hour claims asserted, or wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation. The Released Claims include all claims under federal or state laws for unpaid regular or overtime wages, spread of hours, any related wage and hour claims, all claims for gratuities, all claims for penalties under NYLL § 195, all derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date of the Preliminary Approval Order.

**1.25    Relevant Statutory Period.** The "Relevant Statutory Period" refers to the period from March 12, 2008 through June 30, 2014.

**1.26    Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Rust Consultants, which was selected by the Parties, subject to approval by the Court, to mail the Notices and administer the calculation, allocation, and distribution of the QSF, though the parties reserve the right to select a different Settlement Claims Administrator upon joint consent. The Settlement Claims Administrator's fees shall be borne by the QSF.

**1.27    Settlement Amount.** "Settlement Amount" means Nine Hundred Twelve Thousand Five Hundred Dollars and Zero Cents ($912,500.00), which is the maximum amount Defendants will pay to settle the Litigation as set forth in this Agreement, excluding Defendants' obligation to pay the employer payroll taxes on the portion of the settlement that constitutes wages.

**1.28    Settlement Checks.** "Settlement Checks" means the set of checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

## 2.    INITIAL PROCEDURAL ISSUES

**2.1    Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the parties to seek a full and final settlement of the Litigation.

**2.2    Retention and Responsibilities of the Settlement Claims Administrator.**   The Settlement Claims Administrator will be responsible for the mailing of Notices to Class

Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Checks in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Class Members, and providing copies of the Settlement Checks (front and back) signed by the Class Members to Defendant's Counsel.

(A)     The parties will have equal access to the Settlement Claims Administrator, and the Settlement Claims Administrator will provide regular reports to the parties, but no less frequently than every two (2) weeks, regarding the status of the mailing of the Notices to Class Members, the claims administration process, the identity and number of Class Members who object and/or opt-out of the Settlement, and the distribution and redemption of the Settlement Checks.

(B)     Defendants agree to reasonably cooperate with the Settlement Claims Administrator and to provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members.

**2.3     Preliminary Approval Motion.**

(A)     Following the Parties' execution of this Agreement, Plaintiff's counsel will submit to Defendants' Counsel a draft Motion for Preliminary Settlement Approval memorandum of law, and allow Defendants a reasonable opportunity to review the terms of the memorandum of law to ensure that it is consistent with this Agreement.  In connection with the Preliminary Approval Motion, plaintiff will also submit to the Court (1) a Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, which is appended hereto as Exhibit A; and (2) a proposed Order certifying for purposes of settlement, the State Class under Fed. R. Civ. P. 23 and approving the settlement.  Defendants will draft the proposed Order, and Plaintiff will have a reasonable period before the filing deadline to review and provide comments on the draft Order.

(B)     Class Counsel will file the Preliminary Approval Motion with the Court.  The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement or provide objections to this Agreement, which date shall be sixty (60) days from the mailing of Notice to the Class Members, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things, seek to: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award a Service Award to the Named Plaintiff.

(D)     Defendants will not oppose the Preliminary Approval Motion or application for Attorneys' fees and service award for Named Plaintiff.

(E)     If the Court denies the Preliminary Approval Motion, unless the parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted. Defendants retain the right to contest whether the Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in the Litigation.

(F)     The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4    Notice to Class Members**

(A)     Within twenty-one (21) days of the filing of the Order Granting Preliminary Approval, Defendants will provide the Settlement Claims Administrator, in electronic form, for all Class Members the following information: name, social security number and last known address, as that information exists on file with Defendants. Plaintiff will provide the Settlement Claims Administrator, after first providing this information to Defendants for their review, the calculations of damages for all class members based upon an analysis of Defendants' records. All information provided regarding Class Members will be provided to Class Counsel, except for Class Members' social security numbers.

(B)     Within fifteen (15) days of Defendants' provision of the information set forth in Section 2.4(A) to the Settlement Claims Administrator, the Settlement Claims Administrator, utilizing the addresses provided by Defendants, will mail to all Class Members, at the addresses provided by Defendants, via First Class United States Mail, postage prepaid, the Court–approved Notices of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing in the form appended hereto as Exhibit A.

(C)     The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of those Class Members for whom a Notice is returned by the post office as undeliverable and shall attempt one re-mailing per Class Member, including using social security numbers to obtain better address information. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.5    Class Member Opt-outs.**

(A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the settlement, and include his or her name, job title, address, and telephone numbers and must also state the following words, "I opt out from the settlement in *Manley v. Midan Rest Inc., et al.,* 14-cv-1693" ("Opt-out Statement") in order to be valid.  To be effective, an Opt-out Statement must be postmarked within sixty (60) days after the Settlement Claims Administrator mails the Notice.

(B)    The end of the time period to opt-out of the settlement ("Opt-out Period") shall be sixty (60) days after the day on which the Settlement Claims Administrator successfully mails a Notice to a Class Member.  Class Members whose first mailing was returned to the Settlement Claims Administrator as undeliverable, will be allowed a second sixty (60) day period to opt out from the date of the second mailing. The Settlement Claims Administrator will not attempt more than two (2) mailings of the Notice to any Class Member, and no mailing shall occur more than sixty (60) days after the first mailing to the Class Member.

(C)    The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice to any Class Member, notify Class Counsel and Defendants' Counsel in writing by email of the precise date of the end of the Opt-out Period.

(D)    The Settlement Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof.  The Settlement Claims Administrator will also, within three (3) days of the end of the Opt-out Period, file with the Clerk of Court, stamped copies of any Opt-out Statements.  The Settlement Claims Administrator will, within 24 hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)    Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will be issued a Settlement Check, which will contain a release of both FLSA and New York Labor Law state law claims, and a consent-to-join the Litigation, as set forth in this Agreement.

**2.6** **Defendants' Ability to Revoke.** Defendants have the right to revoke this Agreement if: more than 10% of the Class Members timely file an Opt-out Statement. If Defendants wish to exercise this right, they must do so by e-mail to Class Counsel no later than ten (10) calendar days after the end of the Opt-Out period. If Defendants revoke this Agreement, the Litigation will proceed as if there was no attempt at settlement. In that event, the classes certified for purposes of settlement shall be decertified, and Defendants may contest whether this Litigation should be maintained as a class action or collective action and contest the merits of the claims being asserted by Plaintiffs in the Litigation.

**2.7** **Objections to Settlement.**

(A)    Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain sixty (60) days after the Settlement Claims Administrator mails Notice to such Class Member. The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection. It must also contain the words, "I object to the settlement in *Manley v. Midan Rest. Inc., et al.*, 14-cv-1693. The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and first class mail no later than three (3) days after receipt thereof. The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) days after the end of the Opt-out Period.

(B)    An individual who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections. An Objector may withdraw his or her objections at any time. No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)    The parties may file with the Court written responses to any filed objections no later than seven (7) days before the Fairness Hearing.

**2.8** **Fairness Hearing and Motion for Final Approval and Dismissal.**

(A)    Plaintiff's Counsel will submit to the Court, subject to Defendants' Counsel's prior approval and consent: Motions for Final Approval of Settlement, Payment of Service Awards and Payment of Plaintiff's Counsel's Legal Fees and a Proposed

8

Order Approving the Settlement and Dismissing the Litigation with prejudice ("Final Approval Order"). Defendants shall draft the Final Approval Order and will provide a draft to Plaintiff's Counsel for their review and approval prior to filing. Defendants will not oppose the Motion for Final Approval of Settlement, or the application for Attorneys' fees and service award.

(B)     At the Fairness Hearing and in the Motion for Final Approval and Dismissal, the parties will request that the Court, among other things: (1) certify the Class for purposes of settlement; (2) approve the settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (3) order the Settlement Claims Administrator to distribute Settlement Checks from the Net Settlement Fund to the Class Members and Service Award, if any, to be paid to the Named Plaintiff as described in this Agreement; (4) order the attorneys' fees and costs to be paid to Class Counsel from the QSF; (5) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not opt-out, subject only to an application for relief under Fed. R. Civ. P. 60(b)(1), or 60(d); (6) order entry of Final Judgment in accordance with this Agreement; and (7) retain jurisdiction as necessary for the purpose of filing consent-to-join forms from the Class Members as set forth in their Settlement Checks and other relief.

(C)     If the Court fails to enter a Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the parties will resume the Litigation unless the parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying Final Approval; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(D)     If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted.

(E)     If the Court fails to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. The content of such notice shall be agreed to by the parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.

(F)     The Final Approval Order will direct the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks, (2) retain copies of all of the endorsed Settlement Checks with releases, and (3) provide Defendants' Counsel with the original or copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

**2.9    Releases and Consents to Join.**

(A)    A Class Member who does not timely return an Opt-out Statement will be issued a Settlement Check by the Settlement Claims Administrator from the Net Settlement Fund in accordance with the Final Approval Order.

(B)    All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

**"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing this check, I consent to join the FLSA collective action against Defendants styled *Manley v. Midan Rest. Inc. et al.* No. 14 Civ. 1693 and release Defendants from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law brought or which could have been brought in the Litigation, including but not limited to minimum wage, overtime and misappropriated gratuity claims and claims for penalties under NYLL § 195.

_____        Dated:_____
Signature

Any modification or amendment of the above-language by the Class Member at Defendants' discretion may not be accepted, and may void the Settlement Check.

(C)    The Settlement Claims Administrator will mail the Settlement Checks in one installment.    The Settlement Checks will be mailed within 10 days after Defendants cause the Settlement Amount to be paid, which shall be within ten (10) days of the Effective Date.

(D)    Ninety (90) days after the date Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies of each Settlement Check that has been cashed.  After One Hundred Fifty (150) days from the date the Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants two (2) signed copies of each Replacement Settlement Check that has been cashed.

**3.    SETTLEMENT TERMS**

**3.1    Settlement Amount.**

(A)    Defendants agree to pay a Settlement Amount of Nine Hundred Twelve Thousand Five Hundred Dollars and Zero Cents ($912,500.00), which shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Class Members, any Court-approved Service Awards to Named Plaintiff, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs.  Defendants shall be responsible for payment of the employer portion of

10

any payroll taxes required under applicable law for the portion of the settlement that constitutes wages.

(B)    Defendants shall cause the Settlement Amount to be paid to the Settlement Claims Administrator within ten (10) days of the Effective Date.  If Defendants fail to deposit the entire $912,500.00 into the Escrow account, the Court will direct the Clerk of Court to enter judgment jointly and severally against all Defendants in the amount of $912,500.00.  Plaintiff will be reimbursed all reasonable attorneys' fees and costs incurred in enforcing the judgment.

(C)    The Settlement Claims Administrator shall deposit the Settlement Amount entirely into FDIC insured interest bearing accounts and interest from such interest bearing accounts will become part of the Net Settlement Fund and be held by the Settlement Claims Administrator in escrow.

(D)    Class Members will have one hundred and eighty (180) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks.  Class Members who lose or do not receive their settlement checks must request a replacement check within Ninety (90) days of the check's initial issue date.  All replacement checks shall be valid for forty-five (45) days.

(E)    Any uncashed Settlement Checks will revert to Defendants.   Payment to Defendants shall be issued One Hundred Ninety (190) days after the date the Settlement Checks are originally mailed to Class Members by the Settlement Claims Administrator.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    At the Fairness Hearing and in the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than 33 1/3 % of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses to be paid from the QSF.  After depositing the Settlement Amount with the Settlement Claims Administrator for the QSF, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.  Defendants will not oppose such applications.

(B)    The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.  Any fees or costs sought by Class Counsel but not approved by the Court shall revert to the QSF and will be distributed pro-rata to eligible Class Members.

**Service Award to Named Plaintiff.**

(A)    In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiff will apply to the Court to receive no more than fifteen thousand

11

Dollars and Zero Cents ($15,000.00) as a Service Award from the QSF. Defendants shall not oppose such application.

(B)     The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal. Should all or part of any Service Award sought not be approved by the Court, the sum shall revert to the QSF and will be distributed pro-rata to eligible Class Members.

(C)     Named Plaintiff agrees to the general release in Section 4.1(C) in consideration for receipt of the Service Award, if any, and his respective share of the QSF.

**3.3     Net Settlement Fund and Allocation to Class Members.**

(A)     The allocation to Participating Class Members for Settlement Checks will be made from the remainder of the Qualified Settlement Fund after deductions for: (1) the Settlement Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Award to Named Plaintiff; and (4) any fees associated with establishing, investing, or liquidating the Settlement Fund.

(B)     A Participating Class Member's proportionate share of the Qualified Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following:

  (1)     The Net Settlement Fund shall be paid according to the following allocation:

    (a)     The Net Settlement Fund shall be paid to Class Members who worked from March 12, 2008 through June 30, 2014.

    (b)     The Net Settlement Fund shall be paid to Class Members according to the following allocation: (i) compute the total calculated damages for each Participating Class Member from March 12, 2008 through June 30, 2014 based on Plaintiff's analysis of Defendants' records; (ii) divide the total calculated damages for each Participating Class Member by the total calculated damages of all Participating Class Members; (iii) multiply the amount derived in (ii) by the amount of the Net Settlement Fund to compute the Participating Class Member's total settlement amount.

(C)     Defendants and the Claims Administrator shall exchange such information as is necessary for the Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.4.

(D) The Claims Administrator shall mail to all Class Members their proportionate share of the Net Settlement Fund. The Claims Administrator shall use reasonable efforts to make an additional mailing to Class Members whose checks are returned because of incorrect addresses. Such efforts shall include using social security numbers to obtain better address information.

(E) All payments to Class Members made pursuant to this Agreement shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Class Member to additional compensation or benefits under any of Defendants' bonus, contest or other compensation or benefit plans or agreements in place during the Relevant Statutory Period, nor will it entitle any Class Member to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits. It is the intent of this Settlement that the settlement payments provided for in the Stipulation of Settlement are the sole payments to be made by Defendants to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Relevant Statutory Period).

**3.4    Tax Characterization.**

(A) Settlement Checks paid to Class Members will be allocated 40% to W-2 wage payments and 60% to 1099 non-wage payments for interest, liquidated damages and statutory penalties. Any Service Awards will be considered 1099 non-wage income. All wage payments to Class Members shall be subject to applicable withholding taxes.

(B) The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Class Members, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Class Members.

**4.    RELEASE**

**4.1    Release of Claims.**

(A) By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely opt-out pursuant to this Agreement forever and fully releases Midan Rest. Inc. and Colleen Lydon, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons

13

acting by, through, under or in concert with any of them, from all wage and hour claims that could have been asserted, under federal or state laws by and on behalf of the Class Members in the Litigation. The Released Claims include all claims under federal or New York state laws for regular or overtime wages, spread of hours, any related wage and hour claims, all claims for gratuities, NYLL § 195 penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all Parties.

(B)    Except as provided in this Agreement, Class Counsel and Named Plaintiff, on behalf of the Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

(C)    In addition to the waiver and release contained in Sections 4.1(A)-(B) above, and in consideration for the payment(s) received under Section 3.2(A) as well as Section 3.3(B), Named Plaintiff, his heirs, executors, administrators, successors and assigns, voluntarily releases and forever discharges Defendants, and any of their owners, subsidiaries, divisions, affiliated entities, agents, officers, principals, trustees, administrators, executors, attorneys, employees, former employees, insurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which he may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any other federal, state, city or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules,

regulations and/or guidelines, constitutions or ordinances; any contract (whether oral or written, express or implied) or tort laws; any claim arising under the common law; any other claim for unpaid wages, employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date of Plaintiff's execution of this Agreement.

**4.2    Denial of Liability & Confidentiality.**

(A)    Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, or as an admission that a class should be certified for any purpose other than settlement purposes.

(B)    The Parties and Class Counsel agree that they will not in any manner publicize this Settlement Agreement and Release to any member of the media and will not post or disseminate the terms and conditions of the settlement, or the existence of a settlement, on any social media site (including Facebook, Law 360, Eater, Grub Street, or similar media outlets). Nothing herein, however, shall restrict Class Counsel or Plaintiff from discussing the terms and conditions of the Settlement Agreement and Release with any class member. Further, Plaintiff can respond to private Facebook messages from class members regarding the settlement. Class Counsel shall also be permitted to post the Court's decisions regarding Preliminary and/or final approval of the settlement on its website.

(C)    Plaintiff agrees that the terms of the settlement will be kept confidential up until the filing of the Motion for Preliminary Approval, except that Plaintiff may disclose information to his immediate family or life partners (upon securing an agreement by such person to keep the information confidential), tax or legal advisor. Plaintiff agrees and understands that even following the date of the Motion for Preliminary Approval, he will not publicize the terms of this Settlement Agreement and Release to any member of the media and will not post the terms and conditions of the settlement on any social media (including Facebook, Law 360, Eater, Grub Street, or similar media outlets). Plaintiff further agrees not to make disparaging comments related to Defendants except as may be required by law or protected by law. Thomas Murphy and Colleen Lydon agree not to make disparaging comments related to Plaintiff except as may be required or protected by law.

## 5.   INTERPRETATION AND ENFORCEMENT

**5.1   Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2   No Assignment.**  Class Counsel and Named Plaintiff, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3   Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

**5.4   Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**5.5   Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including participating in a private mediation session. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**5.6   Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7   Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8   Blue Penciling.**  If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9   Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10** **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**5.11** **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12** **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13** **Signature of Named Plaintiff.** This Agreement is valid and binding if signed by the Individual Defendant, the Company's authorized representatives and by the Named Plaintiff.

**5.14** **Facsimile and Email Signatures.** Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, NAMED PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH HIS ATTORNEYS, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST RELEASEES.**

# EXHIBIT A

MANLEY V MIDAN REST INC CLAIMS ADMINISTRATOR
C/O RUST CONSULTING INC – 5135
PO BOX 2396
FARIBAULT MN 55021-9096

|||||||||||||||||||||||||||||||| – <<SequenceNo>>
* B A R C O D E 3 9 *

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

EDWARD MANLEY, on behalf of himself and all
others similarly situated,

               Plaintiff,

   -against-

MIDAN REST. INC. d/b/a MORAN'S CHELSEA
and COLLEEN LYDON,

               Defendants.

14 Civ. 01693 (HBP)

## NOTICE OF CLASS ACTION LAWSUIT SETTLEMENT AND FAIRNESS HEARING

**TO: ALL PERSONS EMPLOYED AS A SERVER, BUSSER OR BARTENDER BETWEEN MARCH 12, 2008 AND JUNE 30, 2014.**

Based on the records of Midan Rest. Inc. d/b/a Moran's Restaurant, (together with Colleen Lydon, "Defendants"), you were employed as a server, busser or bartender at Moran's ("Moran's") between March 12, 2008 and June 30, 2014, and are entitled to participate in the proposed $912,500.00 settlement (the "Settlement") of the case captioned *Manley, et al., v. Midan Rest. Inc. et al.*, 14-cv-1693 (S.D.N.Y.) (the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS CONCERNING THE SETTLEMENT. IF THE SETTLEMENT IS APPROVED BY THE COURT AND YOU TAKE NO FURTHER ACTION, YOU WILL BE BOUND BY ITS TERMS.**

### 1. WHAT IS A CLASS ACTION?

A class action is a lawsuit in which the claims and rights of many people are decided in a single court proceeding. One or more representative plaintiffs, also known as "class representatives," file a lawsuit asserting claims on behalf of the entire class. In this case, the "Class Members" consist of all persons who have worked at Moran's as servers, bussers or bartenders between March 12, 2008 and June 30, 2014.

### 2. WHAT IS THE PURPOSE OF THIS NOTICE?

The Court has ordered that this Notice be sent to you because you were employed by Moran's as a server, busser or bartender at some point between March 12, 2008 and June 30, 2014. The purpose of this Notice is to inform you of your rights under the Settlement Agreement resolving the Lawsuit.

### 3.  WHAT IS THIS CASE ABOUT?

The Lawsuit alleges that the Defendants violated federal and state labor laws by failing to provide Class Members with the full minimum wage, the appropriate overtime compensation for hours worked in excess of 40 per week, failed to pay spread of hours and unlawfully retained employee tips. Finally, the Lawsuit alleges that the Defendants violated the Wage Theft Prevention Act by failing to provide Class Members with annual wage notice forms and wage statements that comply with the requirements of the New York Labor Law ("NYLL").

Defendants deny these allegations and believe that Class Members received all monies to which they were entitled. To avoid the burden, expense, and uncertainty of continuing litigation, the Parties agreed to this Settlement. Defendants have not admitted or conceded and do not admit or concede any wrongdoing or liability.

### 4.  WHAT ARE YOUR OPTIONS?

As a server, busser or bartender at Moran's between March 12, 2008 and June 30, 2014, you have three options with respect to participation in this settlement. You may choose to: (1) **participate in the settlement** and receive your *pro rata* share of the settlement fund after deductions are made for the service award to the named plaintiff, attorneys' fees and costs and administrative fees; (2) **not participate in the settlement** by affirmatively opting out of the settlement; or (3) **object to the settlement** by filing written objections with the Court and appearing at the Fairness Hearing.

### 5.  WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?

The Parties have agreed to settle this matter for the total sum of Nine Hundred Twelve Thousand Five Hundred Dollars and Zero Cents ($912,500.00). Defendants will pay the Settlement Amount within forty (40) days after the Court approves the Settlement, assuming no appeals are taken.

### 6.  HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED?

If the Settlement is approved by the Court, the Defendants will pay a total of $912,500.00 in settlement funds. Subject to Court approval, the following payments and expenses will be deducted from the $912,500.00 settlement amount prior to distribution of the settlement funds to Class Members:

1. Service Award: In recognition of services performed for the Class, the named Plaintiff in the Lawsuit will apply to the Court for the following "service award": Edward Manley – $15,000.00.

2. Attorneys' Fees and Costs: Class Counsel will apply to the Court for attorneys' fees of one-third of the Settlement Fund ($304,166.67), which is one-third of the total settlement amount and recovery of costs of $6,550.34.

3. Administration Expenses: A reasonable amount will be paid from the Settlement Fund to the Claims Administrator selected by the Parties to cover any costs associated with the administration of the settlement payments to Class Members. The Claims Administrator estimates that its costs will not exceed $15,500.00.

If the Court approves these payments, after these deductions, the remaining Settlement Fund (the "Net Settlement Fund") will be distributed to Class Members as set forth below:

1. The Net Settlement Fund shall be paid to Class Members who worked from March 12, 2008 through June 30, 2014.

2. The Net Settlement Fund shall be paid to Class Members according to the following allocation: (i) compute the total calculated damages by each Participating Class Member from March 12, 2008 through June 30, 2014; (ii) divide the total calculated damages by each Participating Class Member by the total calculated damages of all Participating Class Members; (iii) multiply the amount derived in (ii) by the amount of the Net Settlement Fund to compute the Participating Class Member's total settlement amount.

You will have One Hundred Eighty (180) calendar days after the date your settlement checks are issued to cash your settlement checks. If you lose or do not receive your settlement check, you must request a replacement check within Ninety (90) days of the check's issue date. Replacement checks will be valid for forty-five (45) days. Requests for replacement checks after 180 days of the check's issue date will not be honored.

### 7.  HOW MUCH WILL MY PAYMENT BE?

Your settlement payment will be calculated by the Claims Administrator based on the formula in the settlement agreement. You will receive a *pro rata* portion of the Net Settlement Fund based on your length of employment, the total tips you received and the total number of hours that you worked for Moran's from March 12, 2008 through June 30, 2014.

## 8.   WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?

If you are a Class Member who does not opt-out of the Settlement (see section 10, below) and the Settlement is approved by the Court, the Court will enter a Judgment and Final Approval. The Judgment and Final Approval will operate to fully release any and all wage and hour claims based on or under federal or New York law, including but not limited to all claims for unpaid minimum wages, overtime wages, spread of hours and gratuities, and interest, liquidated damages, and attorneys' fees and costs related to such claims that you may have against the Defendants arising between March 12, 2008 and September 15, 2015. You have the right to opt out of the class, retain your own counsel and pursue your own claims individually in a separate litigation.

## 9.   HOW CAN I RECEIVE A SHARE OF THE SETTLEMENT?

If you are eligible to receive payment under this Settlement and do not opt-out of this Settlement, you will automatically receive a check for your share of the Settlement Fund (see section 6 above). You do not need to take any action in order to receive your share of the Settlement Fund. If your address changes before you receive your settlement check, you must contact Pechman Law Group PLLC, 488 Madison Avenue, 11th Floor, New York, New York 10022, (212) 583-9500, to update your mailing address.

## 10. HOW DO I OPT OUT OF THE SETTLEMENT CLASS?

If you do not want to participate in the Settlement, or if you want the right to pursue your own lawsuit, you may opt-out of the Settlement Agreement. Opting out of the settlement means that you will not be a class member in this case and will not be entitled to receive a portion of the settlement money. However, you would be able pursue your claims against Defendants individually as part of a separate action. In such an action, any damages you are owed would be calculated based purely on your individual claims. However, you should be aware that if you choose to opt out of this settlement and initiate your own action, Defendants may have a statute-of-limitations (timeliness) defense, which could potentially bar all, or at least a part of, your claims. Under the terms of the Settlement Agreement, Defendants have the right to rescind the Settlement Agreement if more than ten percent of class members elect to opt out.

To opt-out of the Settlement Agreement, you must mail via First Class United States Mail a letter to Manley v Midan Rest. Inc. Claims Administrator stating: "I OPT OUT FROM THE SETTLEMENT IN MANLEY V. MIDAN REST INC, ET AL., 14-CV-1693." **The letter must be postmarked no later than July 5, 2016 and must include your full name, your address, your job title during your time working at Moran's and your telephone number.** The letter must be mailed to:

**Manley v Midan Rest. Inc. Claims Administrator**
**c/o Rust Consulting Inc. – 5135**
**PO Box 2396**
**Faribault, MN 55021-9096**

**If you do not opt-out within the time limit set forth above, you will be bound by the terms of the Settlement Agreement.**

## 11. WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?

If you wish to object to the proposed Settlement, you must first do so in writing. Class Members who have opted-out of the Settlement may not submit objections to the Settlement. Written objections must be mailed via First Class United States Mail to Manley v Midan Rest. Inc. Claims Administrator, c/o Rust Consulting Inc. –5135, PO Box 2396, Faribault, MN 55021-9096, by July 5, 2016.

Written objections must contain your full name, address, telephone number and your job title during your time working at Moran's, must be signed by you, and must state, "I OBJECT TO THE SETTLEMENT IN MANLEY V. MIDAN REST. INC., ET AL., 14-CV-1693. You must include in the letter the reasons you object.

If you object to the settlement and wish to speak at the Fairness Hearing (see section 12, below), you must include with your written objection the reasons for your objection. The objection should also state: "I intend to appear and wish to be heard at the Fairness Hearing."

If you do not comply with the foregoing procedures and deadlines for submitting objections, you will not be entitled to speak at the Fairness Hearing, contest, or appeal from approval of the settlement or any award of attorneys' fees or expenses, or contest or appeal from any other orders or judgments of the Court entered in connection with the settlement.

All objections will be provided to the Court. The Parties may file written responses to any objections.

- 3 -

## 12. WHEN IS THE FAIRNESS HEARING AND WHAT HAPPENS AT IT?

A hearing before the Honorable Henry B. Pitman will be held on August 15, 2016 at 2:00 p.m. at the United State District Court, Southern District of New York, 500 Pearl Street, Courtroom 18A, New York, NY 10007 (the "Fairness Hearing"). The purpose of the Fairness Hearing is for the Court to determine whether the Settlement is fair, adequate, and reasonable and should be approved by the Court. The Court will take into account any objections raised in accordance with the procedures described in section 11, above.

## 13. DO I HAVE A LAWYER IN THIS CASE?

Louis Pechman and Vivianna Morales of Pechman Law Group PLLC, 488 Madison Avenue, 11th Floor, New York, New York 10022, (212) 583-9500, have been designated as legal counsel to represent you and the other Class Members. These lawyers are called Class Counsel. You will not be charged separately for these lawyers. Their fees will be paid from the total settlement fund (see section 6, above). If you want to be represented by your own lawyer, you may hire one at your own expense.

## 14. HOW CAN I EXAMINE COURT RECORDS?

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings. For more detailed information, you may review the underlying documents and papers on file with the Court. This file may be inspected during the Court's business hours at the Office of the Clerk of the Court, United States District Court, Southern District of New York, 500 Pearl Street, New York, NY 10007. You may also contact Pechman Law Group PLLC to schedule a time to review documents in their office.

## 15. TAX TREATMENT

For tax purposes, 40% of each Class Member's individual settlement payment will be considered back wages subject to lawful deductions and W-2 reporting. For this amount, normal payroll taxes and withholdings will be deducted pursuant to city, state and federal law. The remaining 60% of each Class Member's individual settlement payment will be considered liquidated damages and interest subject to 1099 reporting as non-wage income. At the end of the calendar year, the Claims Administrator will issue each Class Member who has cashed a check an IRS Form W-2 for that portion of the Class Member's settlement payment which is being treated as wages, and an IRS Form 1099 for the portion of the Class Member's settlement payment which is being treated as liquidated damages and interest. Other than the Defendants' portion of the withholdings, Class Members are responsible for the appropriate payment of any taxes on the payments they receive. Class Counsel and Defendants' Counsel do not intend this Notice to constitute tax advice, and to the extent that this Notice is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

If you are presently a party to an individual bankruptcy proceeding, it may be necessary for you to advise the trustee of this settlement.

## 16. WHAT IF I HAVE ADDITIONAL QUESTIONS?

If you have additional questions about this Notice or want more information, you can contact Class Counsel Louis Pechman, Esq. and Vivianna Morales, Esq., Pechman Law Group PLLC, 488 Madison Avenue, 11th Floor, New York, New York 10022, (212) 583-9500, www.pechmanlaw.com

By Order of the Court

Dated: May 5, 2016