```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

EDWARD MANLEY, on behalf of         :
himself and all others
similarly situated, et al.,         :
                                              14 Civ. 1693 (HBP)
                Plaintiffs,         :

                                              OPINION
     -against-                      :         AND ORDER

MIDAN REST. INC. d/b/a              :
"Moran's Chelsea," et al.,
                                    :
                Defendants.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I.  Introduction

Plaintiff Edward Manley, on behalf of himself and all others similarly situated, commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL") §§ 190 et seq. against defendants Midan Rest. Inc., doing business as Moran's Chelsea ("Moran's"), and Colleen Lydon to recover unpaid wages, spread-of-hours pay, unlawful deductions and penalties for failure to provide wage statements and notices.  Manley commenced this action as a collective action pursuant to 29 U.S.C. § 216(b) with respect to the FLSA claims and as a class action with respect to the NYLL claims.  Following the filing of the complaint, opt-in plaintiffs

Jennifer Kuehn, Richard Rodriguez, Chris Hodges, Michael Chang and Benjamin Sperry consented to join the FLSA collective action.

All parties have consented to my exercising plenary jurisdiction pursuant to 18 U.S.C. § 636(c).

By notices of motion dated August 1, 2016 (Docket Items ("D.I.") 37, 39), plaintiffs have moved for an order:  (1) certifying the final settlement class (the "Settlement Class"); (2) approving the class action settlement and FLSA settlement and (3) awarding fees and costs to class counsel, a service award to plaintiff Manley and fees to the claims administrator (Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, dated Aug. 1, 2016 (D.I. 38), at 1; Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Reimbursement of Expenses, and Approval of Service Payment, dated Aug. 1, 2016 (D.I. 40) ("Pl.'s Fee Mem."), at 1).

For the reasons set forth below, plaintiffs' motions are granted.

II.  Factual and
     Procedural History

The complaint alleges that members of the FLSA collective and putative NYLL class are or were employed by defendants

as "waitstaff," which is defined as "waiters, runners, busboys, and bartenders" (Complaint, dated Mar. 12, 2014 (D.I. 2) ("Compl.") ¶¶ 13, 25, 27).[1]  Plaintiffs allege that defendants: (1) failed to pay the minimum wage as a result of the improper application of the FLSA and the NYLL's tip credit allowance; (2) failed to pay overtime premium pay; (3) failed to pay spread-of-hours pay; (4) unlawfully retained portions of the waitstaff's tips for banquet work; (5) failed to reimburse waitstaff for the purchases of materials necessary to complete their work duties and (6) failed to provide waitstaff with wage statements and notices required by the New York Wage Theft Prevention Act (Compl. ¶¶ 31-117).

At the Rule 16 Initial Conference, the parties agreed to exchange limited discovery to assist in developing their claims and defenses and in furtherance of class-wide settlement discussions (Declaration of Louis Pechman, Esq., in Support of Plaintiffs' Motion for Final Approval of Settlement, Class Certification, Approval of FLSA Settlement, Approval of Attorneys' Fees, Reimbursement of Expenses, and Approval of Service Payment, dated Aug. 1, 2016 (D.I. 41) ("Pechman Decl.") ¶¶ 10,

---

[1]The FLSA collective includes waitstaff that worked for defendants on or after March 12, 2011, and the NYLL class includes waitstaff that worked for defendants on or after March 12, 2008 (Compl. ¶¶ 13, 25).

12).  Defendants produced more than one thousand documents relating to plaintiffs' claims, including a sample of payroll summaries for all putative class members, the end-of-year pay stubs of each putative class member, banquet contracts, tip records and timekeeping records (Pechman Decl. ¶ 12).  Plaintiffs also produced their own payroll records and communications relating to Moran's (Pechman Decl. ¶ 14).  After reviewing defendants' records, plaintiffs' counsel performed individual damages calculations for each member of the putative class (Pechman Decl. ¶¶ 15-19).

In June 2015, the parties engaged in an arm's-length negotiation during a thirteen-hour mediation session with media-tor Ruth Raisfeld, Esq., whom plaintiffs' counsel describes as "a well-known and experienced mediator in wage and hour cases" (Pechman Decl. ¶¶ 25, 28, 30).  At the mediation, following a "vigorous exchange regarding their respective claims and de-fenses," the parties reached an agreement on the settlement amount and other key terms (Pechman Decl. ¶ 28).  The parties thereafter negotiated the remaining terms of the settlement, which are memorialized in the Settlement Agreement (Pechman Decl. ¶ 28).

The Settlement Agreement provides that defendants, without conceding the validity of plaintiffs' claims or admitting

4

liability, agree to create a common settlement fund of $912,500.-
00 (Pechman Decl., Ex. 1 §§ 3.1, 4.2(A)).  From the settlement
fund, Manley will receive a $15,000.00 service award, the settle-
ment claims administrator will receive an estimated $15,500.00 to
set up and make distributions from the fund and counsel for
plaintiffs will receive out-of-pocket costs and attorneys' fees,
not to exceed 33 1/3 percent of the total settlement amount,
subject to the Court's approval (Pechman Decl., Ex. 1 §§ 3.1,
3.2, 3.3(A) & Ex. 2 ¶ 13).[2]

The Settlement Agreement provides that the claims
administrator will allocate the remainder of the settlement
proceeds on a pro rata basis as follows:

> (i) compute the total calculated damages for each
> Participating Class Member from March 12, 2008 through
> June 30, 2014 based on Plaintiff's analysis of Defen-
> dants' records; (ii) divide the total calculated dam-
> ages for each Participating Class Member by the total
> calculated damages of all Participating Class Members;
> (iii) multiply the amount derived in (ii) by the amount
> of the Net Settlement Fund to compute the Participating
> Class Member's total settlement amount.

(Pechman Decl., Ex. 1 § 3.3(B)(1)(b)).  Class counsel estimates
that even after taking into account attorneys' fees, service
awards and costs, class members will still recover approximately

---

[2]The Settlement Agreement also states that deductions will
be made from the total settlement amount for "any fees associated
with establishing, investing, or liquidating the Settlement Fund"
(Pechman Decl., Ex. 1 § 3.3(A)).

85% of their back wages (Pechman Decl. ¶ 33).  Forty percent of the amounts paid to class members will be reported to the Internal Revenue Service as W-2 wages and the remainder will be reported on a Form 1099 as non-wage payments for interest, liquidated damages and statutory penalties (Pechman Decl., Ex. 1 § 3.4(A)).  The agreement further provides that if any class member fails to cash his or her settlement check, the check will revert to the defendants (Pechman Decl., Ex. 1 § 3.1(E)).  In return for the settlement payments, each individual who does not opt out of the settlement will release defendants from all wage and hour claims that were brought or could have been brought in this action (Pechman Decl., Ex. 1 § 4.1).

On March 30, 2016, I conditionally certified the NYLL class, appointed Pechman Law Group PLLC as class counsel, preliminarily approved the Settlement Agreement and authorized the notice of settlement (with modifications) to all putative class and collective members (Opinion and Order, dated Mar. 30, 2016 (D.I. 36) ("Preliminary Approval Order"), at 32).

Pursuant to the Preliminary Approval Order, the claims administrator sent the approved notice to all putative class members, informing them of (1) their rights under the settlement (including the right to opt out of or object to the settlement); (2) class counsel's intention to seek one-third of the settlement

6

fund for attorneys' fees and costs; (3) the request for a service
award of $15,000.00 to Manley; (4) the claims administrator's
fees and (5) the manner in which the remainder of the fund would
be distributed (Pechman Decl. ¶ 38 & Ex. A to Ex. 1).  No puta-
tive class members objected to the settlement, and only one
member opted out (Pechman Decl., Ex. 2 ¶¶ 11-12).

On August 1, 2016, plaintiffs filed the pending motion
for final approval.  Defendants took no position with respect to
the motion.  I held a fairness hearing on August 15, 2016; no
putative class member appeared at the hearing or made a written
submission concerning the settlement.[3]

III.  Analysis

A.  Final Certification
of the Settlement Class

In the Preliminary Approval Order, familiarity with
which is assumed, I concluded that the Settlement Class satisfied
the requirements of numerosity, commonality, typicality, ade-
quacy, ascertainability and maintainability under Rule 23(a) and

---

[3]One putative class member arrived after the hearing con-
cluded.  Nevertheless, I spoke with her on the record and allowed
her until August 26, 2016 to make a written submission informing
me whether she was opting out of or objecting to the settlement.
To date, I have not received any submission from her.

7

(b)(3), and preliminarily granted conditional certification of the Settlement Class, "consisting of all individuals who worked for defendants as 'tipped employees,' including 'servers, bussers, and bartenders,' between March 12, 2008 and June 30, 2014" (Preliminary Approval Order, at 9-19).

      To date, no facts have been presented to me to indicate that my preliminary determination was incorrect nor has any party claimed that my preliminary determination was erroneous.  Thus, for the reasons stated in the Preliminary Approval Order, I conclude that final certification of the Settlement Class is proper.

      B.  Approval of
          Settlement Agreement

      Pursuant to Fed.R.Civ.P. 23(e), the settlement of a class action is not effective until judicially approved.  Although there is a general policy favoring settlements, the court may approve a class action settlement only if it "is fair, adequate, and reasonable, and not a product of collusion."  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000).  This requires consideration of both procedural and substantive fairness.  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005) ("A court determines a settlement's fairness by looking at

both the settlement's terms and the negotiating process leading
to settlement."), citing D'Amato v. Deutsche Bank, 236 F.3d 78,
85 (2d Cir. 2001).

    1.   Procedural Fairness

In assessing procedural fairness, there is "a presump-
tion of fairness, reasonableness, and adequacy as to the settle-
ment where 'a class settlement [is] reached in arm's-length
negotiations between experienced, capable counsel after meaning-
ful discovery.'" McReynolds v. Richards-Cantave, 588 F.3d 790,
803 (2d Cir. 2009) (alteration in original), quoting Wal-Mart
Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 116.

"In addition, courts encourage early settlement of
class actions, when warranted, because early settlement allows
class members to recover without unnecessary delay and allows the
judicial system to focus resources elsewhere." Beckman v.
KeyBank, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (Ellis, M.J.).

Here, the parties engaged in responsible, arm's-length
negotiations before and during a thirteen-hour mediation session
to reach an early settlement.  The parties exchanged information
and documents that enabled both sides to assess plaintiffs'
claims and calculate potential damages (Pechman Decl. ¶¶ 12-21).
During the mediation, the parties engaged in vigorous discussions

regarding their respective claims and defenses (Pechman Decl. ¶ 28).  At the mediation, the parties reached an agreement on the settlement amount and several other key terms (Pechman Decl. ¶ 28).  During the next few months, the parties negotiated the remaining terms of the settlement, which was executed on September 10, 2015 (Pechman Decl. ¶¶ 28, 31).

Thus, I conclude that the settlement is procedurally fair pursuant to Rule 23(e).

2.  <u>Substantive Fairness</u>

In assessing whether a settlement is substantively fair, the district court must consider the nine <u>Grinnell</u> factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>McReynolds v. Richards-Cantave</u>, <u>supra</u>, 588 F.3d at 804, <u>quoting</u> <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 463 (2d Cir. 1974), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Goldberger v. Integrated Res.</u>, <u>Inc.</u>, 209 F.3d 43 (2d Cir. 2000); <u>accord</u> <u>Charron v. Wiener</u>, 731

F.3d 241, 247 (2d Cir. 2013).  All the <u>Grinnell</u> factors weigh in favor of final approval.

The first <u>Grinnell</u> factor supports final approval because litigation through trial would be complex, expensive and long.  Additional discovery would be required, including depositions of more plaintiffs, defendant Lydon and members of the Moran's management team (Pechman Decl. ¶ 76).  "[P]reparation for trial would . . . seriously prolong the outcome of this suit in addition to consuming tremendous amounts of time, expenses and judicial resources." <u>Sewell v. Bovis Lend Lease, Inc.</u>, 09 Civ. 6548 (RLE), 2012 WL 1320124 at *7 (S.D.N.Y. Apr. 16, 2012) (Ellis, M.J.).  Moreover, "[l]itigating the claims of hundreds of putative class members would undoubtedly yield expensive litigation costs that can be curbed by settling the action." <u>Sewell v. Bovis Lend Lease, Inc.</u>, <u>supra</u>, 2012 WL 1320124 at *7.

The second <u>Grinnell</u> factor weighs in favor of final approval because the class's reaction to the settlement was very positive.  The notice informed class members of their rights under the settlement and all the material terms of the settlement.  No class member objected to the settlement and only one opted out; this positive response to the settlement is evidence of its fairness.  <u>See</u> <u>Wright v. Stern</u>, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (Chin, then D.J., now Cir. J.) ("The fact that

11

the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate."); see also Flores v. Anjost Corp., 11 Civ. 1531 (AT), 2014 WL 321831 at *5 (S.D.N.Y. Jan. 29, 2014) (Torres, D.J.) (approving settlement where no class member objected or opted out); Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 475 (concluding class reaction was positive where none objected and eight of 1,735 members opted out); Guaman v. Ajna-Bar NYC, 12 Civ. 2987 (DF), 2013 WL 445896 at *5 (S.D.N.Y. Feb. 5, 2013) (Freeman, M.J.) (finding fairness where there were no objections or requests for exclusion).

The third Grinnell factor also weighs in favor of final approval.  When evaluating the level of discovery completed, "[t]he pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" Prasker v. Asia Five Eight LLC, 08 Civ. 5811 (MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010) (Cedarbaum, D.J.), quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004).  Defendants produced more than one thousand documents relating to the claims, including samples of payroll summaries for all class members, the end-of-year pay stubs for each class member, banquet contracts, tip records and timekeeping records (Pechman Decl. ¶ 12).  Plaintiffs produced their own payroll

12

records and their communications regarding Moran's (Pechman Decl.
¶ 14).  Plaintiffs' counsel conducted an extensive investigation
of the claims to determine potential damages, including discus-
sions with plaintiffs, reviewing and analyzing defendants'
production and researching Moran's (Pechman Decl. ¶¶ 15-17).
Moreover, the general manager of Moran's and three opt-in plain-
tiffs were deposed (Pechman Decl. ¶¶ 22-24).  Throughout discov-
ery, counsel had numerous informal discussions to facilitate
class counsel's understanding of defendants' payroll records
(Pechman Decl. ¶ 18).

　　　　The fourth and fifth Grinnell factors support final
approval.  "Litigation inherently involves risks," both in
establishing liability and damages.  In re PaineWebber Ltd.
P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (Stein,
D.J.), aff'd sub nom., In re Painewebber Inc. Ltd. P'ships
Litig., 117 F.3d 721 (2d Cir. 1997) (per curiam); see also In re
Ira Haupt & Co., 304 F. Supp. 917, 934 (S.D.N.Y. 1969) (Motley,
D.J.) ("If settlement has any purpose at all, it is to avoid a
trial on the merits because of the uncertainty of the outcome.").
Here, the claims and defenses are fact-intensive and present
risks, including plaintiffs' potential inability to prove that
Moran's retained a percentage of the gratuity fee charged to its
banquet clients, and defendants' potential inability to rebut

plaintiffs' evidence concerning unlawful deductions and defendants' willfulness (Pechman Decl. ¶¶ 23, 73, 74).  Settlement eliminates these uncertainties.

The sixth Grinnell factor, the risk of maintaining collective and class certification throughout trial, also weighs in favor of final approval of the settlement.  A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed.R.Civ.P. 23(f) or a motion to decertify by defendants, requiring additional briefing.  "Settlement eliminates the risk, expense, and delay inherent in the litigation process."  Sukhnandan v. Royal Health Care of Long Island LLC, 12 Civ. 4216 (RLE), 2014 WL 3778173 at *7 (S.D.N.Y. July 31, 2014) (Ellis, M.J.).

With respect to the seventh Grinnell factor, it is unclear whether defendants could pay a judgment greater than the settlement amount.  Defendants sold the restaurant in 2014; thus, in the absence of a viable restaurant entity, plaintiffs would have to recover a judgment from defendant Lydon personally (Pechman Decl. ¶ 77).  Defendants claimed that Lydon has or had multiple debts, including debts to investors (Pechman Decl. ¶ 27).  Defendants also denied that Lydon was personally liable as an employer under the FLSA and NYLL (Pechman Decl. ¶ 27).

14

However, "[e]ven if [defendants] could have withstood a greater judgment, a 'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'" Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 476, quoting Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005).   Thus, the seventh factor is neutral and does not preclude final settlement approval.

The eighth and ninth Grinnell factors weigh in favor of final approval.   "'[T]here is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"   Frank v. Eastman Kodak Co., supra, 228 F.R.D. at 186, quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).   Here, the $912,500.00 falls within the range of reasonableness.   Class counsel estimates that even after taking into account attorneys' fees, service awards and costs, class members will still recover approximately 85% of their back wages (Pechman Decl. ¶ 33).   In light of the best possible recovery and the attendant risks of litigation, this settlement provides the class a fair recovery.

Because all the relevant factors weigh in favor of settlement, I hereby grant the motion for final approval and

unconditionally approve the settlement as set forth in the
Settlement Agreement.

   C.   Approval of the
        FLSA Settlement

        A settlement in an FLSA collective action is not
effective unless it is approved by either a district court or the
United States Department of Labor.  Cheeks v. Freeport Pancake
House, Inc., 796 F.3d 199, 200 (2d Cir. 2015), cert. denied, 136
S. Ct. 824 (2016).  However, settlement of a collective action
does not implicate the same due process concerns as the settle-
ment of a class action because, unlike in Rule 23 class actions,
the failure to opt in to an FLSA collective action does not
prevent a plaintiff from bringing suit at a later date.  See
Romero v. La Revise Assocs., L.L.C., 58 F. Supp. 3d 411, 421
(S.D.N.Y. 2014) (Gorenstein, M.J.); Beckman v. KeyBank, N.A.,
supra, 293 F.R.D. at 476.  Accordingly, an FLSA settlement is
examined with less scrutiny than a class action settlement, and
"satisfaction of the Grinnell factor analysis will, necessarily,
satisfy the standards of approval of the FLSA settlement."  Henry
v. Little Mint, Inc., 12 Civ. 3996 (CM), 2014 WL 2199427 at *7
(S.D.N.Y. May 23, 2014) (McMahon, D.J.); accord Hall v. ProSource
Techs., LLC, No. 14-CV-2502 (SIL), 2016 WL 1555128 at *9 (E.D.N.-

16

Y. Apr. 11, 2016); <u>Sierra v. Spring Scaffolding LLC</u>, No. 12-cv-5160 (JMA), 2015 WL 10912856 at *4 (E.D.N.Y. Sept. 30, 2015).

The only plaintiffs with FLSA claims in this action are the six opt-in plaintiffs -- Edward Manley, Jennifer Kuehn, Richard Rodriguez, Chris Hodges, Michael Chang and Benjamin Sperry.  Because the <u>Grinnell</u> factors weigh in favor of granting final approval to the settlement, necessarily the standard for approval under <u>Cheeks</u> is satisfied.  Therefore, the FLSA settlement is approved.

   D.   Dissemination
        <u>of Notices to Class</u>

Pursuant to the Preliminary Approval Order, Rust Consulting, Inc., the claims administrator, mailed notices (as revised pursuant to the Preliminary Approval Order) to all class members (Pechman Decl. ¶ 38).  I conclude that the notices fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt in to the collective action, to object to the settlement and to appear at the fairness hearing held on August 15, 2016.  Pursuant to Rule 23(c)(2)(B), class members were provided with "the best notice that [was] practicable under the circumstances."  Further, I conclude that the notices and the process by which they were

distributed comported with all constitutional requirements,
including those of due process.  I confirm Rust Consulting, Inc.
as the claims administrator.

      E.  Award of Fees and
         Costs to Class Counsel

      The FLSA and NYLL each provide that a successful
plaintiff can recover his or her reasonable attorneys' fees and
costs.  See 29 U.S.C. § 216(b); N.Y. Labor L. §§ 198, 663(1).
Even where the plaintiff agrees to a settlement, counsel is still
entitled to his or her fees.  Kahlil v. Original Old Homestead
Rest., Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (Holwell,
D.J.).

      An application for attorneys' fees must be supported by
"contemporaneous time records" that "specify, for each attorney,
the date, the hours expended, and the nature of the work done."
New York State Ass'n for Retarded Children, Inc. v. Carey, 711
F.2d 1136, 1148 (2d Cir. 1983).  "Carey establishes what is
essentially a hard-and-fast-rule 'from which attorneys may
deviate only in the rarest of cases' . . . ."  Scott v. City of
New York, 643 F.3d 56, 57 (2d Cir. 2011) (per curiam), quoting
Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (per
curiam).  Not even a District Judge's personal observations of an

attorney's work can substitute for the required contemporaneous time records.  Scott v. City of New York, supra, 643 F.3d at 58. The burden is on the attorney requesting fees to provide suffi-cient evidence, including production of contemporaneous time records or sufficient explanation for their absence.  Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986), citing New York State Ass'n for Retarded Children, Inc. v. Carey, supra, 711 F.2d at 1148, 1154.

In addition, in order for me to make a determination as to the reasonableness of the award sought, plaintiffs must provide sufficient information regarding the qualifications of the attorneys and the paralegals for whom fees are sought.  See, e.g., Yea Kim v. 167 Nail Plaza, Inc., 05 Civ. 8560 (GBD)(GWG), 2009 WL 77876 at *9 (S.D.N.Y. Jan. 12, 2009) (Daniels, D.J.) (reducing attorney and paralegal rates where no information was provided to the court regarding their backgrounds); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (Robinson, D.J.) (reducing paralegal rate where limited information was provided regarding paralegals' qualifications and the nature of their work).

1.   <u>Attorneys' Fees Requested</u>

Plaintiffs are represented by attorneys at the firm of Pechman Law Group PLLC.  The retainer agreement provided that plaintiffs had the option of retaining class counsel on an hourly basis or on a contingency of one-third of the recovery; plaintiffs chose the latter (Pechman Decl. ¶ 72).  Class counsel seeks one-third of the $912,500.00 settlement fund, or $303,862.50, as attorneys' fees and costs in the amount of $6,550.34 (Pechman Decl. ¶ 50).  Furthermore, counsel has submitted time records reflecting $210,910.00 in attorney and staff fees (Pechman Decl., Ex. 4).  Plaintiffs' counsel contends that fees should be calculated using the percentage-of-the-fund method rather than the lodestar method (Pl.'s Fee Mem., at 3-6).

There have been no objections to the attorneys' fees sought by counsel (Pechman Decl. ¶ 52).

Whether an attorneys' fee award is reasonable is within the discretion of the court.  <u>Black v. Nunwood, Inc.</u>, 13 Civ. 7207 (GHW), 2015 WL 1958917 at *4 (S.D.N.Y. Apr. 30, 2015) (Woods, D.J.) (collecting cases).  In <u>Goldberger v. Integrated Resources, Inc.</u>, <u>supra</u>, 209 F.3d at 52-53, the Second Circuit noted that, in common fund cases, "fixing a reasonable fee becomes even more difficult because the adversary system is

typically diluted -- indeed, suspended -- during fee proceedings" since the defendants "have little interest in how [the fund] is distributed and thus no incentive to oppose the fee" and "class members -- the intended beneficiaries of the suit -- rarely object."  Thus, in common fund cases, the district court must assess a fee award "based on scrutiny of the unique circumstances of each case, and a jealous regard to the rights of those who are interested in the fund."  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 53 (internal quotation marks omitted).

"Although [the Second Circuit] ha[s] acknowledged that 'the trend in this Circuit is toward [awarding fees on] the percentage [of the fund] method,' it remains the law in this Circuit that courts 'may award attorneys' fees in common fund cases under either the "lodestar" method or the "percentage of the fund" method.'"  McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (collecting cases), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 121.  Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund.  See McDaniel v. County of Schenectady, supra, 595 F.3d at 418.  Under the lodestar method, the "lodestar" is calculated as the product of a reasonable hourly rate and the reasonable number of hours required by the case, creating a presumptively reasonable fee.  Perez v. AC

Roosevelt Food Corp., 744 F.3d 39, 44 (2d Cir. 2013) (Jacobs, Cir. J., dissenting).  While "there is a 'strong presumption' that the lodestar figure is reasonable," it may be adjusted by a multiplier when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee."  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010).

"[N]either the lodestar nor the percentage-of-fund approach to awarding attorneys' fees in common fund cases is without problems."  McDaniel v. County of Schenectady, supra, 595 F.3d at 418-19 (describing the problems with and benefits of both methods).  Ultimately, common fund fee awards must be "made with moderation" and the court must "act as a fiduciary who must serve as a guardian of the rights of absent class members."  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 52 (internal quotation marks omitted; emphasis in original).  Accordingly, in this Circuit, both the lodestar and the percentage-of-the-fund methods are

> guided by the traditional criteria in determining a
> reasonable common fund fee, including:  (1) the time
> and labor expended by counsel; (2) the magnitude and
> complexities of the litigation; (3) the risk of the

22

> litigation . . .; (4) the quality of representation;
> (5) the requested fee in relation to the settlement;
> and (6) public policy considerations.

Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 50

(internal quotation marks omitted; alteration in original).

Where the percentage-of-the-fund method is used, the Second

Circuit "encourage[s] the practice of requiring documentation of

hours as a 'cross check' on the reasonableness of the requested

percentage." Goldberger v. Integrated Res., Inc., supra, 209

F.3d at 50, citing In re Gen. Motors Corp. Pick-Up Truck Fuel

Tank Prods. Liab. Litig., 55 F.3d 768, 820 (3d Cir. 1995); see

also Cassese v. Williams, 503 F. App'x 55, 59 (2d Cir. 2012)

(summary order); Masters v. Wilhelmina Model Agency, Inc., 473

F.3d 423, 436 (2d Cir. 2007).

Although I have previously cautioned against the

percentage-of-the-fund method, noting the need for a "robust

judicial analysis" of fee awards, Long v. HSBC USA Inc., 14 Civ.

6233 (HBP), 2016 WL 4764939 at *4, *8 (S.D.N.Y. Sept. 13, 2016)

(Pitman, M.J.); Mills v. Capital One, N.A., 14 Civ. 1937 (HBP),

2015 WL 5730008 at *9-*10 (S.D.N.Y. Sept. 30, 2015) (Pitman,

M.J.), given the relatively small size of the settlement fund

here, I shall use the percentage-of-the-fund method in awarding

attorneys' fees and assess their reasonableness using the

Goldberger criteria set forth above. Consistent with my obliga-

tion to approach fee applications with "a jealous regard to the rights of those who are interested in the fund," <u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 53 (internal quotation marks omitted), I shall then apply the lodestar approach as a "cross check" on the reasonableness of the requested percentage. <u>See</u>, <u>e.g.</u>, <u>Cortes v. New Creators, Inc.</u>, 15 Civ. 5680 (PAE), 2016 WL 3455383 at *2, *5, *7-*9 (S.D.N.Y. June 20, 2016) (Engelmayer, D.J.) (applying percentage-of-the-fund method for $675,000.00 settlement and using lodestar analysis as a cross check); <u>Viafara v. MCIZ Corp.</u>, 12 Civ. 7452 (RLE), 2014 WL 1777438 at *1, *9-*10, *14-*15 (S.D.N.Y. May 1, 2014) (Ellis, M.J.) (applying percentage-of-the-fund method for $550,000.00 settlement and using lodestar analysis as a cross check); <u>Febus v. Guardian First Funding Grp., LLC</u>, 870 F. Supp. 2d 337, 339-40 (S.D.N.Y. 2012) (Stein, D.J.) (applying percentage-of-the-fund method for $850,000.00 settlement and using lodestar analysis as a cross check).

 2.   <u>The Goldberger Criteria</u>

  a.  Counsel's
      <u>Time and Labor</u>

Plaintiffs' counsel's efficient and effective representation of plaintiffs in securing the settlement warrant the fees

requested.  Plaintiffs' counsel reasonably expended approximately 560 attorney hours and 15 paralegal and law clerk hours over two and one-half years to secure the settlement and reach the point of final approval.  During that time, plaintiffs' counsel conducted an investigation into plaintiffs' claims and defendants' business practices, reviewed documents, interviewed the named and opt-in plaintiffs, represented plaintiffs at a mediation, successfully negotiated a settlement with defendants and proceeded efficiently through the litigation (Pechman Decl. ¶¶ 15-30).  Plaintiffs' counsel will also spend additional hours to administer the settlement.

     b.  The Litigation's
        <u>Magnitude and Complexity</u>

     This case is larger and more complex than the typical FLSA collective action.  "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." <u>Siler v. Landry's Seafood House-North Carolina, Inc.</u>, 13 Civ. 587 (RLE), 2014 WL 2945796 at *9 (S.D.N.Y. June 30, 2014) (Ellis, M.J.); <u>see also</u> <u>Henry v. Little Mint, Inc.</u>, <u>supra</u>, 2014 WL 2199427 at *13.  Here, the FLSA

settlement resolves the claims of 275 Rule 23 class members
(Pechman Decl., Ex. 2).   The settlement negotiated by counsel
takes into account the various circumstances presented.   <u>See</u>
<u>Sukhnandan v. Royal Health Care of Long Island LLC</u>, <u>supra</u>, 2014
WL 3778173 at *10 ("The size and difficulty of the issues in a
case are significant factors to be considered in making a fee
award.").   Therefore, this factor also favors the fee award.

### c.   The Risk
of Litigation

Plaintiffs' counsel faced risk because they represented
plaintiffs on a contingent basis and have received no fee for
their work since the commencement of this action (Pechman Decl.
¶¶ 53, 72).   "Uncertainty that an ultimate recovery will be
obtained is highly relevant in determining the reasonableness of
an award."   <u>Febus v. Guardian First Funding Grp., LLC</u>, <u>supra</u>, 870
F. Supp. 2d at 340 (internal quotation marks omitted); <u>accord</u>
<u>Henry v. Little Mint, Inc.</u>, <u>supra</u>, 2014 WL 2199427 at *14.   "Risk
falls along a spectrum, and should be accounted for accordingly."
<u>Goldberger v. Integrated Res., Inc.</u>, <u>supra</u>, 209 F.3d at 54.   In
addition, victory in a contested suit would have been far from
clear because plaintiffs lacked records to support the bulk of

26

their claims (Pechman Decl. ¶ 73).  Accordingly, the third
Goldberger criteria also supports the fees sought.

          d.  The Quality
            of Representation

The quality of class counsel and their representation
of plaintiffs also supports the fee award.  "To determine the
'quality of the representation,' courts review, among other
things, the recovery obtained and the backgrounds of the lawyers
involved in the lawsuit."  Taft v. Ackermans, 02 Civ. 7951 (PKL),
2007 WL 414493 at *10 (S.D.N.Y. Jan. 31, 2007) (Leisure, D.J.);
see also Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D.
193, 200 (S.D.N.Y. 2011) (Sand, D.J.) ("There is no dispute that
Plaintiffs' counsel are qualified and experienced in class action
law and wage and employment litigation in New York.").  Louis
Pechman and the Pechman Law Group have significant experience
representing both employers and employees in wage and hour
actions in this District (Pechman Decl. ¶¶ 56-58, 60-62).  Louis
Pechman has an excellent reputation in this District in the field
of employment law.  See Chhab v. Darden Rests., Inc., 11 Civ.
8345 (NRB), 2016 WL 3004511 at *2 (S.D.N.Y. May 20, 2016)
(Buchwald, D.J.); Carino v. Broadway & 166, LLC, 10 Civ. 8506
(KNF), slip op. at 4 (S.D.N.Y. May 1, 2013) (Fox, M.J.); Kahlil

27

v. Original Old Homestead Rest., Inc., supra, 657 F. Supp. 2d at
475; Duchene v. Michael Cetta, Inc., 06 Civ. 4576 (PAC)(GWG),
2009 WL 5841175 at *2 (S.D.N.Y. Sept. 10, 2009) (Crotty, D.J.).
Class counsel conducted a thorough investigation of plaintiffs'
claims through interviews with plaintiffs, review of documents
obtained from plaintiffs and defendants, background research on
defendants and calculation of damages for each class member
(Pechman Decl. ¶¶ 15-21).  Class counsel's work on plaintiffs'
behalf, aided by their experience, ultimately aided plaintiffs in
the progress of the litigation and in reaching a fair settlement.

            e.  Relationship of
                the Fees to the Settlement

        Under Goldberger, "[c]ourts consider the size of a
settlement to ensure that the [fees] awarded do[] not constitute
a windfall." Sukhnandan v. Royal Health Care of Long Island LLC,
supra, 2014 WL 3778173 at *13.  "Where the size of the fund is
relatively small, courts typically find that requests for a
greater percentage of the fund are reasonable." Sukhnandan v.
Royal Health Care of Long Island LLC, supra, 2014 WL 3778173 at
*13.  Fees of one-third in FLSA cases are routinely approved in
this Circuit.  Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ.
814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams,

D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit"); Febus v. Guardian First Funding Grp., LLC, supra, 870 F. Supp. 2d at 340 ("[A] fee that is one-third of the fund is typical" in FLSA cases); accord Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freeman, M.J.).  Even after attorneys' fees, costs, service awards and claims adminis-trator fees are distributed from the fund, the class members will still recover approximately 85% of their estimated back wages. Thus, this criterion also weighs in favor of the fees requested.

f.  Public Policy
    Considerations

Finally, "[w]hen determining whether a fee award is reasonable, courts consider the social and economic value of the class action, 'and the need to encourage experienced and able counsel to undertake such litigation.'" Siler v. Landry's Seafood House-North Carolina, Inc., supra, 2014 WL 2945796 at *11, quoting In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (Pollack, D.J.).  "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage and hour laws]." Henry v. Little Mint, Inc., supra, 2014 WL 2199427 at *15 (alteration in original), citing Willix v. Healthfirst, Inc., No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862 at *6 (E.D.N.Y. Feb. 18, 2011). However, these public policies must be balanced against the need to award fees "with an eye to moderation," particularly where the fee application is unopposed and there is little incentive for plaintiffs to object when the impact on their individual poten- tial recovery of any increase or decrease in the fee award is incremental.  Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 53 (internal quotation marks omitted).

Public policy also favors consistency with respect to fee awards; in the absence of countervailing factors such as

differences in the qualifications of counsel or the complexity of the issues, there should not be wide disparities in the fee awards to the same firm (or attorneys with similar qualifications) in different litigations involving similar legal and factual issues. See generally Wells Fargo Bank N.A. v. Walls, No. 1:12-cv-664 (LMB/IDD), 2013 WL 869902 at *3 (E.D. Va. Mar. 4, 2013) (approving hourly rates because they were consistent with the rates previously awarded to the same attorneys), aff'd, 543 F. App'x 350 (4th Cir. 2013) (per curiam).

Class counsel's representation enabled class members to recognize they had claims and to participate in the litigation. As counsel points out, "[a] substantial portion of the class members involved in this litigation worked at the restaurant for a relatively short period of time and without this litigation may not have even known" they had claims (Pl.'s Fee Mem., at 14). Moreover, in light of the "moderately small recoveries of the individual class members here" (Pl.'s Fee Mem., at 14), it is unlikely these class members would have been willing to pursue separate litigation. This is another factor in favor of awarding counsel their fees.

3.   The Lodestar

Class counsel also argues that the lodestar supports their request for a $303,862.50 fee.  As explained below, a lodestar analysis supports the fee award.

Class counsel spent the following hours[4] on this matter and their hourly rates are set forth below:

Louis Pechman, Esq.
Partner - 34 years experience

134.7 hours @ $600/hour                    $80,820.00

Gianfranco J. Cuadra, Esq.
Associate - 8 years experience

15.6 hours @ 400/hour                      $6,240.00

---

[4]In support of their application for fees, plaintiffs' counsel have submitted computerized compilations of contemporaneous time records describing how they spent the hours for which fees are sought (Pechman Decl., Ex. 4).  Such transcriptions of contemporaneous time records have been found to satisfy the requirements set forth above.  See, e.g., Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (accepting a "typed listing of [attorneys'] hours from their computer records," in lieu of contemporaneous records, where the record showed that the attorneys "made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records"); Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 302-03 (S.D.N.Y. 1999) (Edelstein, D.J.) ("The actual original time sheets are not necessary; submitting an affidavit and attaching a computer printout of the pertinent contemporaneous time records is acceptable."); Lenihan v. City of New York, 640 F. Supp. 822, 824 (S.D.N.Y. 1986) (Conner, D.J.) ("The Court routinely receives computerized transcriptions of contemporaneous time records from firms whose billing records are maintained in computers" as "a form convenient for the Court.").

<u>Vivianna Morales, Esq.</u>
Associate - 4 years experience

402.1 hours @ $300/hour                    $120,630.00

<u>Laura Rodriquez, Esq.</u>
Associate - 4 years experience

7 hours @ $250/hour                        $1,750.00

**TOTAL**                                  **$209,440.00**

      Class counsel has also provided the qualifications of each attorney for whom fees are sought (Pechman Decl. ¶¶ 56-62).

      Counsel also provided the following information on paralegal and law clerk work:

7.1 hours @ $100/hour                      $710.00

7.6 hours @ $100/hour                      $760.00

**TOTAL**                                  **$1,470.00**

The foregoing work was performed by one paralegal and one law clerk.  Counsel also provided a description of the background and qualifications of the paralegal and law clerk (Pechman Decl. ¶¶ 63-64).

      a.  Reasonable
         <u>Hourly Rates</u>

      The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay."

33

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of
Albany, 522 F.3d 182, 184 (2d Cir. 2007).  This rate should be
"in line with those [rates] prevailing in the community for
similar services by lawyers of reasonably comparable skill,
experience and reputation."  Blum v. Stenson, 465 U.S. 886, 895
n.11 (1984); accord Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d
224, 232 (2d Cir. 2006).  In determining reasonable hourly rates,
a court should first examine the attorneys' experience.  Kahlil
v. Original Old Homestead Rest., Inc., supra, 657 F. Supp. 2d at
475.  The court should not only consider the rates approved in
other cases in the District, but should also consider any evi-
dence offered by the parties.  Farbotko v. Clinton Cty., 433 F.3d
204, 208-09 (2d Cir. 2005).  The Court is also free to rely on
its own familiarity with prevailing rates in the District.  A.R.
ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 81
n.16 (2d Cir. 2005); Miele v. New York State Teamsters Conference
Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987).

   Counsel for plaintiffs is experienced in FLSA actions.
Mr. Pechman's declaration describes the Pechman Law Group as an
"'A-V' rated[5] [law firm] by Martindale-Hubbell and specializes in

---

   [5]An A-V rating is "the highest rating given to a lawyer and
law firm through a peer-review rating process."  Velez v. Novart-
is Pharm. Corp., 04 Civ. 9194 (CM), 2010 WL 4877852 at *19
                  (continued...)

representing both workers and businesses in workplace disputes"
(Pechman Decl. ¶ 57).   Mr. Pechman has been appointed class
counsel in several wage and hour collective and class actions in
this District (Pechman Decl. ¶ 58).   His declaration also de-
scribes the experience and qualifications of each attorney who
worked on this litigation.   These include the attorneys' law
school graduation dates, years of practice and experience in
employment litigation (Pechman Decl. ¶¶ 56-62).

    Although courts in this district have occasionally
awarded hourly rates of $550 and $600 to experienced senior
litigators, FLSA litigators are rarely awarded over $450 per
hour.   See Cortes v. New Creators, Inc., supra, 2016 WL 3455383
at *7; Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 27-29
(S.D.N.Y. 2015) (Dolinger, M.J.); Kim v. Kum Gang, Inc., 12 Civ.
6344 (MHD), 2015 WL 3536593 at *2 n.16 (S.D.N.Y. June 5, 2015)
(Dolinger, M.J.).[6]   Plaintiffs' counsel notes that the firm's

---

[5](...continued)
(S.D.N.Y. Nov. 30, 2010) (McMahon, D.J.).

[6]Accord Farmer v. Hyde Your Eyes Optical, Inc., 13 Civ. 6653
(GBD)(JLC), 2015 WL 2250592 at *14 (S.D.N.Y. May 13, 2015) (Cott,
M.J.); Patino v. Brady Parking, Inc., 11 Civ. 3080 (AT)(DF), 2015
WL 2069743 at *2-*3 (S.D.N.Y. Apr. 30, 2015) (Freeman, M.J.);
Black v. Nunwood, Inc., supra, 2015 WL 1958917 at *5-*6; Rosendo
v. Everbrighten Inc., 13 Civ. 7256 (JGK)(FM), 2015 WL 1600057 at
*8-*9 (S.D.N.Y. Apr. 7, 2015) (Maas, M.J.) (Report & Recommenda-
tion), adopted by, 2015 WL 4557147 (S.D.N.Y. July 28, 2015)
(Koeltl, D.J.); Watkins v. Smith, 12 Civ. 4635 (DLC), 2015 WL
                                  (continued...)

clients regularly accept and pay the requested hourly rates
(Pechman Decl. ¶ 71; Pl.'s Fee Mem., at 16); however, counsel
does not cite any cases awarding Pechman Law Group or Mr. Pechman
the hourly rates requested here.[7]   Indeed, plaintiffs' citations
to other cases in support of counsel's hourly rates are not
persuasive.   Most of the cases cited are not FLSA actions, and
one case was in the Eastern District of New York.   But, I note
that plaintiffs' counsel does cite Torres v. Gristede's Operating
Corp., 04 Civ. 3316 (PAC), 2012 WL 3878144 at *3-*4 (S.D.N.Y.
Aug. 6, 2012) (Crotty, D.J.), aff'd, 519 F. App'x 1 (2d Cir.
2013) (summary order), in which the Honorable Paul A. Crotty,
United States District Judge, awarded hourly rates of up to $550
per hour.

       Consistent with the authorities cited above, and
considering counsel's experience, skills and level of contribu-
tion to the work, I conclude that the hourly rates sought for

_____

       [6](...continued)
476867 at *3 (S.D.N.Y. Feb. 5, 2015) (Cote, D.J.); Easterly v.
Tri-Star Transp. Corp., 11 Civ. 6365 (VB), 2015 WL 337565 at *10
(S.D.N.Y. Jan. 23, 2015) (Briccetti, D.J.) (adopting report and
recommendation); Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d
424, 437 (S.D.N.Y. 2014) (Pauley, D.J.).

       [7]In Kahlil v. Original Old Homestead Restaurant, Inc.,
supra, 657 F. Supp. 2d at 476, Mr. Pechman was awarded an hourly
rate of $400, noting that "the fact that the wage and hour issues
in this case were not particularly complex or unusual supports
application of the unexceptional rate of $400 per hour for a
senior lawyer with 25 years' experience."

three of the attorneys who worked on this matter are excessive. The rates sought are higher than the rates typically awarded in this District, even recognizing that counsel is experienced and negotiated a very favorable settlement.  I conclude that the following hourly rates are reasonable:

| Name | Hours | Hourly Rate Awarded | Preliminary Lodestar |
|------|-------|--------------------|--------------------|
| Louis Pechman | 134.7 | 500 | 67,350.00 |
| Gianfranco Cuadra | 15.6 | 350 | 5,460.00 |
| Vivianna Morales | 402.1 | 275 | 110,577.50 |
| Laura Rodriguez | 7.0 | 250 | 1,750.00 |
| **TOTAL:** | **559.40** | | **$185,137.50** |

As to the fees for paralegal work, in recent FLSA actions, hourly rates between $100 and $150 have been found to be reasonable.  See, e.g., Gonzalez v. Scalinatella, Inc., supra, 112 F. Supp. 3d at 29 (awarding paralegal hourly rates of $100 to $105); Naviq8 Chems. Asia Pte., Ltd. v. Crest Energy Partners, LP, 15 Civ. 7639 (PAE), 2015 WL 7566866 at *2 (S.D.N.Y. Nov. 24, 2015) (Engelmayer, D.J.) (awarding hourly rate of $150 for paralegal work); Guallpa v. N.Y. Pro Signs Inc., 11 Civ. 3133 (LGS)(FM), 2014 WL 2200393 at *10 (S.D.N.Y. May 27, 2014) (Maas, M.J.) (Report & Recommendation) (awarding paralegal hourly rate of $125), adopted by, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014)

(Schofield, D.J.); Viafara v. MCIZ Corp., supra, 2014 WL 1777438 at *14 (awarding an hourly rate of $125 to paralegal).  As to the fees for law clerk work, hourly rates between $120 and $150 have been found to be reasonable.  See, e.g., Santos v. Yellowstone Props., Inc., 15 Civ. 3986 (PAE), 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.) (awarding law clerk hourly rate of $125); Ni v. Bat-Yam Food Servs. Inc., 13 Civ. 7274 (ALC)(JCF-), 2016 WL 369681 at *7 (S.D.N.Y. Jan. 27, 2016) (A. Carter, D.J.) (awarding hourly rate of $120 to law clerk); Sukhnandan v. Royal Health Care of Long Island LLC, supra, 2014 WL 3778173 at *14-*15 (awarding hourly rate of $125 to law clerk); Guallpa v. N.Y. Pro Signs Inc., supra, 2014 WL 2200393 at *10 (awarding hourly rate of $150 to law clerk).  Accordingly, a $100 hourly rate for the work of the paralegal and an hourly rate of $100 for the law clerk's work are reasonable.

        b.  Reasonable
            Number of Hours

        The party seeking attorneys' fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, supra, 34 F.3d at 1160, citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Wong v. Hunda Glass Corp.,

09 Civ. 4402 (RLE), 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1, 2010) (Ellis, M.J.).  Courts "should exclude . . . hours that were not reasonably expended," such as where there is overstaffing or the hours are "excessive, redundant, or otherwise unnecessary."  Hensley v. Eckerhart, supra, 461 U.S. at 434 (internal quotation marks omitted).

The hours billed by plaintiffs' counsel to this matter are reasonable.  Only four attorneys were assigned to and billed to this matter; the vast majority of the work, totaling 536.8 hours, was done by two attorneys, Louis Pechman and Vivianna Morales.  The other two attorneys who worked on this matter billed a total of only 22.6 hours; these hours are not excessive or redundant and the time records provide specific descriptions of the work performed.  These hours are, therefore, reasonable.  Additionally, 7.1 hours of paralegal time and 7.6 hours of law clerk time are reasonable.

Thus, the total lodestar is $186,607.50.  The $303,862.50 fee award represents a 1.63 multiplier, which is well within the range of multipliers that courts have allowed.  See, e.g., Fujiwara v. Sushi Yasuda Ltd., supra, 58 F. Supp. 3d at 439 ("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases."); Capsolas v. Pasta Res. Inc., 10 Civ. 5595 (RLE), 2012

39

WL 4760910 at *9 (S.D.N.Y. Oct. 5, 2012) (Ellis, M.J.) ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar"; citing cases). Plaintiffs' counsel's request for one-third of the settlement fund, or $303,862.50, is, therefore, granted.

    F.   <u>Costs</u>

      Class counsel also seeks reimbursement of costs of $6,550.34 in connection with its representation of plaintiffs (Pechman Decl. ¶ 50). "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients." <u>Miltland Raleigh-Durham v. Myers</u>, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (Motley, D.J.), <u>quoting</u> <u>Reichman v. Bonsignore, Brignati & Mazzotta, P.C.</u>, 818 F.2d 278, 283 (2d Cir. 1987). Here, class counsel's expenses, including filing and deposition fees, postage charges and plaintiffs' share of the mediator fees, are reasonable and were incidental and necessary to the representation of the class. I award class counsel reimbursement of its requested litigation expenses in the amount of $6,550.34.

G.   Manley's
Service Award

Plaintiffs also request that Manley receive a service award of $15,000.00 (Pechman Decl. ¶ 41).  Service awards, also called enhancement or incentive awards, are common in class actions.  They "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."  Parker v. Jekyll & Hyde Entm't Holdings, L.L.C., 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 at *1 (S.D.N.Y. Feb. 9, 2010) (Francis, M.J.); accord Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 483.

Here, Manley initiated this action and assisted counsel's investigation and prosecution of the claims by providing factual information, producing documents, reviewing defendants' document production, appearing for all depositions, responding to defendants' discovery requests, assisting with preparation for the mediation and attending the mediation (Pechman Decl. ¶ 42).

The $15,000.00 service award represents approximately 1.64% of the $912,500.00 settlement fund.[8]  This is well within the range of service awards recently approved in this District. See, e.g., Hyun v. Ippudo USA Holdings, 14 Civ. 8706 (AJN), 2016

---

[8]Plaintiffs' counsel erroneously states that it represents .01% of the settlement fund (Pechman Decl. ¶ 47).

WL 1222347 at *1–*2 (S.D.N.Y. Mar. 24, 2016) (Nathan, D.J.)
(awarding incentive payments totaling 5.0% of $580,000.00 settle-
ment); Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 472, 483
(awarding incentive payments totaling 1.6% of $4,900,000.00 FLSA
settlement); Johnson v. Brennan, 10 Civ. 4712 (CM), 2011 WL
4357376 at *2, *21 (S.D.N.Y. Sept. 16, 2011) (McMahon, D.J.)
(awarding incentive payments totaling 9.1% of $440,000.00
FLSA/NYLL settlement); DeMunecas v. Bold Food, LLC, 09 Civ. 440
(DAB), 2010 WL 3322580 at *1, *11 (S.D.N.Y. Aug. 23, 2010)
(Batts, D.J.) (awarding incentive payments totaling 3.1% of
$800,000.00 FLSA/NYLL settlement).

Accordingly, I grant the requested service award.

## H.  Administrator Fees

Pursuant to the Settlement Agreement, plaintiff re-
tained Rust Consulting, Inc. as the claims administrator.  No
class member objected to the fee as detailed in the notice
(Pechman Decl., Ex. 2 ¶ 12).  The fee sought by the claims
administrator of $15,500.00 is reasonable and is approved.

42

IV.  <u>Conclusion</u>

Accordingly, for all the foregoing reasons, plaintiffs' motions are granted as follows:

1.  Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), the following class is certified for settlement purposes: all individuals who worked for defendants as "tipped employees," including "servers, bussers, and bartenders," between March 12, 2008 and June 30, 2014.

2.  The Settlement Agreement is unconditionally approved.

3.  The "Effective Date" of the settlement shall be the date thirty days after entry of this Final Approval Order approving the Settlement Agreement, if no appeal is filed.  If an appeal is taken, the "Effective Date" shall be the next business day after all appeals are finally resolved in favor of final approval.

4.   In accordance with the terms of the Settlement
Agreement and after the Effective Date of this Order,
the claims administrator shall distribute the funds in
the settlement amount by making the following payments:

- Paying the claims administrator fee of
  $15,500.00;

- Paying $310,412.84 to class counsel as reim-
  bursement for litigation costs and payment of
  attorneys' fees; and

- Paying a service award of $15,000.00 to
  Manley.

5.   Following the disbursement set forth above,
the claims administrator shall distribute the remaining
funds in the settlement account to collective and class
members in accordance with the allocation plan de-
scribed in the Settlement Agreement.

6.   I shall retain jurisdiction over this action
for the purpose of enforcing the Settlement Agreement
and overseeing the distribution of settlement funds.
The parties shall abide by all terms of the Settlement
Agreement, which are incorporated by reference herein,
and this Order.

44

7.   Upon the Effective Date of this Order, this litigation shall be dismissed with prejudice.

8.   The Clerk of the Court is respectfully requested to close Docket Items 37 and 39.

Dated:  New York, New York
        March 27, 2017

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel of Record

45